Hank Bates (SBN 167688)
hbates@cbplaw.com
Randall K. Pulliam (*admitted pro hac vice*)
rpulliam@cbplaw.com
Edwin Lee Lowther (*admitted pro hac vice*)
llowther@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR 72201
Tel. 501-312-8500
Fax 501-312-8505

Don F. Livornese (State Bar No. 125,934)
donl@ruyakcherian.com
RUYAK CHERIAN LLP
222 N. Pacific Coast Highway, Suite 2000
El Segundo, CA 90245
Tel. 310-586-7689

James Lawrence Kauffman (*admitted pro hac vice*)
jkauffman@baileyglasser.com
BAILEY GLASSER, LLP
1055 Thomas Jefferson St, NW Suite 540
Washington, DC 20007
Tel. (202) 463-2101

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

*San Francisco Division*

| | |
|---|---|
| LAWRENCE TORLIATT,<br>on behalf of himself and<br>all others similarly situated,<br><br>    Plaintiff,<br><br>       v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>    Defendant.<br>_____<br><br>CONSOLIDATED WITH:<br><br>*Lawrence Torliatt v. PHH Mortgage Corp.*,<br>Case No. 3:19-cv-04356-WHO<br>_____ | Case No. 3:19-cv-04303-WHO<br><br><br>**SECOND AMENDED<br>CONSOLIDATED CLASS<br>ACTION COMPLAINT**<br><br>**CLASS ACTION<br>DEMAND FOR JURY TRIAL**<br><br>Leave to File Granted April 17, 2020<br>ECF No. 49 |

Plaintiff, LAWRENCE TORLIATT, on behalf of himself and all others similarly situated, alleges that Defendants Ocwen Loan Servicing, LLC ("Ocwen") and PHH Mortgage Corporation ("PHH") (collectively, "Defendants") violated the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), breached their contracts with borrowers, and that PHH violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692f and §1692e ("FDCPA"), as described more fully below.

1.      Many borrowers in California struggle enough to make their regular mortgage payments without getting charged extra, illegal fees when they try to pay by phone or online ("Pay-to-Pay fees"). Federal and state debt collection laws strictly prohibit any such charges unless expressly agreed to by the borrower in the agreement creating the obligation. But Pay-to-Pay fees are found nowhere in any standard deed of trust.

2.      Here, Defendants pay Western Union to process Pay-to-Pay transactions at a cost of about $0.40 each. Despite this low cost, Defendants charge homeowners a $5.00 to $20.00 Pay-to-Pay fee for each online or pay-by-phone mortgage payment transaction, pocketing the difference as profit.

3.      Defendants service mortgages on behalf of mortgage loan investors and other servicers throughout the United States, including California. According to Defendant's public filings with the Securities Exchange Commission, they service 1,419,943 loans nationwide with unpaid principal balances exceeding $214 Billion.[1] Servicing primarily involves the collection of principal and interest payments from borrowers, as well as the management of loans that are delinquent or in foreclosure or bankruptcy, and other related activities, on behalf of mortgage loan investors and other servicers.[2] Defendants collect payments owed to third parties on hundreds of thousands of loans in California and over a million loans nationwide.

---

[1] https://sec.report/Document/0001628280-20-002312/ at 5.
[2] *Id. See also*, Exhibit A (Deed of Trust at ¶ 20 (Loan Servicer is an entity "that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.").

4.    Ocwen has already been sued under the FDCPA for collecting Pay-to-Pay fees in an Alabama federal court (the "Alabama action"), and it agreed to pay $9.7 million to settle those claims. Yet Ocwen continues to charge the fees nationwide and in California. In doing so, Ocwen takes advantage of homeowners and breaches the terms of its own agreements.

5.    In October 2018, Ocwen acquired PHH. Since that time, Ocwen has transferred the servicing of its loan portfolio, including Plaintiff's loan, to PHH. In servicing Plaintiff's and other borrowers' loans, PHH has continued the illegal practice of collecting excessive and unauthorized Pay-to-Pay fees.

6.    Defendants have long known Pay-to-Pay fees are illegal, but charge them anyway, violating the FDCPA and Rosenthal Act, and violating their mortgage contract by charging fees not expressly allowed under the uniform contractual obligations contained in standard form mortgage loan agreements.

## JURISDICTION AND VENUE

7.    This Court has personal jurisdiction over Ocwen because it conducts business in California and commits torts in California, as described in this Second Amended Consolidated Class Action Complaint.

8.    This Court has personal jurisdiction over PHH because it conducts business in California and commits torts in California, as described in this Consolidated Class Action Complaint.

9.    The Court has jurisdiction under 28 U.S.C. § 1332(d)(2). The parties to this action are minimally diverse. Moreover, the amount in controversy, exclusive of costs and interests, exceeds $5,000,000.00.

10.    Defendants, individually and collectively during the class period, are two of the largest mortgage servicers in the nation and service millions of residential mortgages, including mortgages given by borrowers in California. In the Alabama action, Ocwen collected from class members more than $32,000,000.00 in Pay-to-Pay fees during a period of four and a half years. The class there included only the subset of borrowers whose loans were in default when Ocwen began servicing them. Here, the Rosenthal Act has no such acquired-in-default

limitation. To be conservative, multiplying that damages figure by California's twelve percent of the U.S. population, the damages at issue here amount to approximately $4,000,000.00, exclusive of the value of the injunction Plaintiff seeks to stop the practice and attorneys' fees. Thus, the amount in controversy exceeds $5,000,000.00.

11.     Venue is proper because this is where the cause of action accrued.

## PARTIES

12.     Plaintiff Lawrence Torliatt is a natural person residing in California who has a mortgage loan that was serviced by Ocwen on his home located in California.

13.     Defendant Ocwen Loan Servicing, LLC is a corporation with a principal place of business in West Palm Beach, Florida. Defendant is one of the nation's leading specialty loan servicing companies.

14.     Defendant PHH Mortgage Corporation is a corporation with a principal place of business in Mount Laurel, New Jersey. Defendant is one of the nation's leading specialty loan servicing companies.

## APPLICABLE LAW

**FDCPA**

15.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

16.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

17.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

18.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

19.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

20.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

21.     The FDCPA contains an exclusion from the term "debt collector" for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity:… (iii) concerns a debt which was *not in default at the time it was obtained* by such person." *Id* (emphasis added)*.

22.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

23.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**ROSENTHAL ACT**

24.     The Rosenthal Act is "a remedial statute [that] should be interpreted broadly in order to effectuate its purpose." *See People ex rel. Lungren v. Superior Court,* 14 Cal. 4th 294, 313, 58 Cal. Rptr. 2d 855, 926 P.2d 1042 (Cal. 1996) ("[C]ivil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose."); *Komarova v. National Credit Acceptance, Inc.*, 95 Cal. Rptr. 3d 880, 892, 175 Cal. App. 4th 324, 340 (Cal. Ct. App. 2009).

25.     The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

26.     The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f).

27.     The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e).

28.     The Rosenthal Act makes it illegal for any entity covered by it to engage in certain conduct prohibited by the FDCPA, including the conduct prohibited in Section 1692f(1). Cal. Civ. Code § 1788.17. By engaging in conduct prohibited by the FDCPA, Defendants violated the Rosenthal Act.

29.     Moreover, the Rosenthal Act prohibits "(b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

30.     The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

## FACTUAL ALLEGATIONS

31.     On or around December 15, 2005, Mr. Torliatt purchased a home in Sonoma County, California, with a mortgage loan from Argent Mortgage Company, LLC ("Argent").

32.     Mr. Torliatt's mortgage is owed to Argent and was serviced by Fannie Mae and sub-serviced by Ocwen Loan Servicing, LLC.

33.     Mr. Torliatt's Ocwen loan number is ######8324.

34.     Since November 2018, Mr. Torliatt has made mortgage payments online through his bank account, with both Ocwen and PHH collecting these payments on behalf of Argent as the lender.

35.     Ocwen collected from Mr. Torliatt $7.50 for internet payments, including payments made on 11/12/2018, 12/11,2018, 1/12/2019, 2/13/2019, and 3/13/2019. (ECF No.

24-1, at 50.)[3] Mr. Torliatt's monthly payments are each due on the first of the month. (*Id.,* at 7, ¶ 3.)

36.      Mr. Torliatt's Deed of Trust does not authorize a fee to make a payment online.

37.      On or about April 16, 2019, Mr. Torliatt was notified by PHH that the servicing of his mortgage was transferred from Ocwen to PHH on April 11, 2019. (*See* Notice of Servicing Transfer, ECF No. 24-1, at 28–39.)

38.      The Notice of Servicing Transfer included an "FDCPA Validation of Debt" which stated that as of 4/11/19, Mr. Torliatt owed: $530 in late charges, $2,545.52 in Collection Costs, and $1,648.46 in Escrow Advances, for a "Total Unpaid Debt" of $4,729. (*Id.*, at 34.)

39.      Under the terms of Mr. Torliatt's Deed of Trust, collection costs may only be charged in connection with Mr. Torliatt's default. Exhibit A, ¶ 9.

40.      The FDCPA Validation of Debt states: "This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose." (*Id.,* at 53.) This language is required by the FDCPA in all debt collector communications with debtors. 15 U.S. Code § 1692e(11).

41.      Mr. Torliatt's monthly statements show that much of the Unpaid Debt listed in his FDCPA Validation of Debt is the result of collection charges imposed in October and November of 2018, totaling approximately $1,348.52. (Exhibit B, 11/13/2018 Monthly Statement.) These charges included fees for "Notice of Default Recording," "Appt. of Substitute Trustee," "FC Thru Complaint," and "Statutory Mailings." (*Id*.) Again, according to Mr. Torliatt's Deed of Trust, these are fees that can only be charged in connection with Mr. Torliatt's default. Exhibit A, ¶ 9.

42.      Monthly statements in the months that follow the 11/13/18 statement show that these charges, fees, and advances remained "Past Due" from November 13, 2018 until at least through May 13, 2019, a date after PHH had begun servicing Mr. Torliatt's mortgage on April

---

[3] Pinpoint citations to the record refer to the page number stamped at the top of each page by the CM/ECF system.

11, 2019. *See* Exhibit B, Monthly Statements for December 2018 through April 2019; and ECF No. 24-1 at 45, Monthly Statement dated May 13, 2019.

43. Thus, as of 4/11/2019, when the servicing of Mr. Torliatt's loan was transferred to PHH, PHH had treated Mr. Torliatt's loan as past due and delinquent.

44. According to Mr. Torliatt's April 8, 2019 statement he had Past Due Payment Amounts of $5,115.98, plus Regular Payment of $2,034.96 for a total Unpaid Amount of $7,150.94.

45. The first statement Mr. Torliatt received from PHH, dated May 13, 2019 reflected that he then owed PHH past due late charges, shortages and other fees of $2,545.52, as well as his regular mortgage payment for a total of $5,115.98. This is the amount of Mr. Torliatt's previous balance with Ocwen less a monthly mortgage payment paid on April 11, 2019.

46. Mr. Torliatt's Note states that he is obligated to make payments on the first day of each month. (ECF No. 24-1, at 7, ¶ 3.) The Note further states under the heading "Default": "If I do not pay the full amount of monthly payment on the date it is due, I will be in default." (*Id.,* at 29, ¶7(B).)

47. Mr. Torliatt's Deed of Trust states "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. . . . and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." Exhibit A, ¶ 9.

48. Before transferring the servicing of Mr. Torliatt's loan to PHH, Ocwen requested payment each month of amounts it had advanced Mr. Torliatt, as well as previously accrued late fees and collection costs.

49. PHH continued these requests when it began servicing Mr. Torliatt's mortgage.

50. Thus, at the time PHH acquired the servicing rights to Mr. Torliatt's loan, he was in default, as defined by his note and mortgage.

51. PHH collected from Mr. Torliatt $7.50 for internet payments, including payments made on 4/11/2019, 5/13/2019, 6/13/2019, and 7/15/2019. (ECF No. 24-1, at 50.)

Mr. Torliatt's monthly payments are each due on the first of the month. (*Id.,* at 7, ¶ 3.)

52.     Since beginning the servicing of his loan in April 2019, PHH has continued to charge Mr. Torliatt fees of $7.50 for making his mortgage payments online.

53.     Defendants, as servicers, regularly collect or attempt to collect, directly or indirectly, debts owed or asserted to be owed or due another. Defendants collect debts on behalf of mortgage loan investors, and other servicers. *See* ¶ 3, *supra*. Neither Defendant is or was the holder or investor of Mr. Torliatt's mortgage.

54.     According to the FDCPA Validation of Debt letter PHH sent to Mr. Torliatt on or about April 16, 2019, PHH Mortgage Services is the servicer of his account "for ('Creditor') ARSI 2006-W2." (ECF No. 24-1, at 34.) On Information and belief, ARSI 2006-W2 is Argent Mortgage Company, LLC, the originator of Mr. Torliatt's loan, or an affiliated entity.

55.     With respect to loans acquired in default, mortgage servicers are debt collectors under the FDCPA if they regularly collect debts owed another. *See e.g. Randall v. Ditech Financial, LLC*, 233 Cal.Rptr.3d 271, 276, 23 Cal.App.5th 804, 810 (Cal.App. 4 Dist. 2018) (mortgage servicer who regularly collects debts on behalf of others, and who began servicing the plaintiff's mortgage after the loan was in default was a debt collector under the FDCPA; denying motion to dismiss where complaint alleged Ditech collects debts on behalf of others, and began servicing plaintiff's loan when it was in default); *Babadjanian v. Deutsche Bank National Trust Company*, 2010 WL 11549894, at *5 (C.D. Cal. Nov. 12, 2010).

56.     PHH is a debt collector under the FDCPA because it regularly collects debts on behalf of others and acquired the servicing rights to debts, including Plaintiff's, when it considered those debts to be in default.

57.     Defendants contract with Western Union to process all of their online and automated phone payment transactions ("Pay-to-Pay Transactions"). The cost to Defendants under the contract depends on the monthly volume of Pay-to-Pay Transactions processed by Western Union. Given the volume of Pay-to-Pay Transactions, the actual cost that Defendants pays Western Union to process Pay-to-Pay Transactions is about $0.20 to $0.40 per transaction.

1    58.    Defendants' demands for payment of Pay-to-Pay fees is a breach of the Deed of

2    Trust, which does not delineate Pay-to-Pay fees as one of the charges that the lender, or loan

3    servicer acting on behalf of the lender, may charge. There is no provision in the mortgage that

4    allows Defendants to collect Pay-to-Pay fees.

5    59.    Defendants' demand for payment of Pay-to-Pay fees is a direct breach of

6    Paragraph 14 of the Deed of Trust: "Lender may not charge fees that are expressly prohibited

7    by this Security Instrument or by Applicable Law." Exhibit A, ¶ 14. The Agreement defines

8    "Applicable Law" in Paragraph I as "all controlling applicable federal, state, and local statutes,

9    regulations, ordinances and administrative rules and orders (that have the effect of law) as well

10   as all applicable final, non-appealable judicial opinions." *Id.*, ¶ (I). Moreover, "[t]his Security

11   Instrument shall be governed by Federal law and the law of the jurisdiction in which the

12   Property is located." *Id.*, ¶ 16. Federal debt collection law prohibits the collection of any

13   amount incidental to the principle obligation unless that amount is *expressly* stated in the loan

14   agreement. *See* 15 U.S.C. § 1692f(1) (making unlawful the "collection of any amount

15   (including any interest, fee, charge or expense incidental to the principal obligation) **unless**

16   **such amount is expressly authorized by the agreement creating the debt or permitted by**

17   **law**." (emphasis added).

18   60.    Ocwen's collection of Pay-to-Pay fees violated the Rosenthal Act. PHH's

19   collection of Pay-to-Pay fees violated both the Rosenthal Act and the FDCPA.

20   61.    Further, Fannie Mae's servicing guidelines, which Defendants must follow

21   when sub-servicing Fannie Mae loans, do not allow the collection of any fees on routine

22   borrower collections, including the Pay-to-Pay fees charged by Defendants. *See* Fannie Mae

23   Servicing Guide A2-3-05 ("The servicer is not authorized to charge the borrower fees relating

24   to the following activities: facilitating routine borrower collections.").

25   62.    By charging the Pay-to-Pay fees, Ocwen has breached the "Uniform Covenants"

26   contained in Paragraphs 14 and 16 of Plaintiff's uniform deed of trust on a class-wide basis.

27   63.    Prior to filing this Complaint, Mr. Torliatt made a written pre-suit demand upon

28   Defendants.

64.    Defendants were given a reasonable opportunity to cure their breaches described herein but failed to do so.

## CLASS REPRESENTATION ALLEGATIONS

65.    Plaintiff LAWRENCE TORLIATT, brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the following classes of persons, subject to modification after discovery and case development:

**The California Class:**

> All persons with a California address who paid a fee to Ocwen and/or PHH for making a loan payment by telephone, IVR, or the internet during the applicable statutes of limitations for Plaintiff's non-FDCPA claims through the date a class is certified.

**The Nationwide Class:**

> All persons who were borrowers on residential mortgage loans that were not owned by PHH and to which PHH acquired servicing rights when such loans were in default on their loan payment obligations, and paid a fee to PHH for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations for Plaintiff's FDCPA claim through the date a class is certified.

66.    Class members are identifiable through Defendants' records and payment databases.

67.    Excluded from the Classes are any class members who did not opt-out of the class action settlement in *McWhorter et al. v. Ocwen Loan Servicing, LLC*, Case No. 2:15-cv-01831 (N.D. Ala.); the Defendants; any entities in which Defendants have a controlling interest; Defendants' agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

68.    Plaintiff proposes that he serve as representative of the Classes.

69.    Plaintiff and members of the Classes have all been harmed by the actions of Defendants.

70.     Numerosity is satisfied. According to Defendants' servicing records there are likely thousands of members of the classes. Individual joinder of these persons is impracticable.

71.     There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

a.  Whether Ocwen and PHH violated the Rosenthal Act by charging Pay-to-Pay fees to members of the California Class that were not expressly authorized by contract or permitted by law;

b.  Whether Ocwen and PHH violated the unlawful prong of the California Unfair Practices Act (Cal. Bus. & Prof. Code § 17000 *et. seq.*) by charging Pay-to-Pay fees to members of the California Class in violation of the Rosenthal Act;

c.  Whether PHH violated the FDCPA by charging Pay-to-Pay fees to Plaintiff and members of the Nationwide Class that were not expressly authorized by contract or permitted by law;

d.  Whether Ocwen and PHH breached their Deeds of Trust by charging Pay-to-Pay fees to members of the California Class;

e.  Whether Ocwen and PHH violated Fannie Mae's servicing guidelines as a sub-servicer by charging Pay-to-Pay fees to members of the California Class;

f.  Whether Ocwen's and PHH's cost of Pay-to-Pay transactions under its contract with Western Union is less than the amount it charged Plaintiff and members of the Classes for Pay-to-Pay fees;

g.  Whether Plaintiff and members of the Classes are entitled to actual and/or statutory damages as a result of Defendants' actions;

h.  Whether Plaintiff and members of the California Class are entitled to an injunction prohibiting Defendants from collecting and attempting to collect Pay-to-Pay fees; and

i.  Whether Plaintiff and members of the Classes are entitled to attorney's fees and costs.

72.     Plaintiff's claims are typical of the claims of members of the Classes. Ocwen and PHH charged Plaintiff Pay-to-Pay fees in the same manner as the class members. Ocwen and PHH entered into a contract with Western Union to process the Plaintiff's and class members' Pay-to-Pay Transactions. Plaintiff and class members entered into uniform covenants in their Deeds of Trust that prohibit Pay-to-Pay charges. Alternatively, if Ocwen and PHH are allowed under the Deeds of Trust to charge Pay-to-Pay fees as a default-related fee, such amount is capped for Plaintiff and class members at the actual amounts disbursed by Ocwen or PHH to Western Union for the Pay-to-Pay Transactions, approximately $0.20 to $0.40 under Defendants' contracts with Western Union.

73.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of members of the Classes, and he will fairly and adequately protect the interests of members of the Classes. Plaintiff has taken actions before filing this complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the Classes.

74.     Plaintiff has hired counsel that is skilled and experienced in class actions and is adequate class counsel capable of protecting the interests of the Classes.

75.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

76.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I AS TO DEFENDANTS' VIOLATIONS OF THE ROSENTHAL ACT**

**CAL. CIV. CODE §§ 1788 *et seq***

**(By Mr. Torliatt on behalf of California Class)**

77.     The Rosenthal Act applies to Defendants because they regularly engage in debt collection within California. Cal. Civ. Code § 1788.2(c).

78.     Mr. Torliatt purchased his home by residential mortgage for personal, family or household use and is a person who incurred a consumer debt. Cal. Civ. Code § 1788.2(e), (f).

1       79.    Plaintiff's mortgage was at all relevant times due and owing, for the reasons

2   stated above

3       80.    By collecting Pay-to-Pay fees from Plaintiff and members of the California

4   Class, Defendants collected an amount incidental to the principal obligation without the amount

5   being expressly stated in the underlying loan agreement or permitted by law, conduct that is

6   prohibited by Section 1692f(1) of the FDCPA.

7       81.    The Rosenthal Act makes it illegal for any entity covered by it to engage in

8   conduct prohibited by the FDCPA. Cal. Civ. Code § 1788.17. By engaging in conduct

9   prohibited by the FDCPA, Defendants violated the Rosenthal Act.

10       82.    Moreover, by collecting and attempting to collect Pay-to-Pay fees that were not

11   otherwise permitted by law from Plaintiff and class members, Defendants violated the

12   Rosenthal Act's prohibition against "(b) Collecting or attempting to collect from the debtor the

13   whole or any part of the debt collector's fee or charge for services rendered, or other expense

14   incurred by the debt collector in the collection of the consumer debt, except as permitted by

15   law." Cal. Civ. Code § 1788.14.

16       83.    By assessing Pay-to-Pay fees, Defendants represented to Plaintiff and members

17   of the California Class that their debts may be increased by the addition of the Pay-to-Pay fees,

18   even though Pay-to-Pay fees may not be legally added to the existing obligation. These

19   representations violated the Rosenthal Act's prohibition against representing that a consumer

20   debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not

21   be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

22       84.    Defendants assessed the Pay-to-Pay fees against Plaintiff and members of the

23   California Class knowingly and/or willfully. Ocwen has already been sued and settled a similar

24   action, and as an assignee of the Plaintiff's and California Class members' loans is bound with

25   knowledge of the underlying mortgage loan agreements' terms, and has collected these

26   amounts hundreds of thousands of times from class members in a scheme that cannot be

27   accidental.

28

85.     Ocwen violated the Rosenthal Act because it retains for itself a portion of the Pay-to-Pay fees it collects from California borrowers.

86.     As a result of each and every violation of the Rosenthal Act, Plaintiff and members of the California Class are entitled to recover from Defendants any actual damages pursuant to Cal. Civ. Code § 1788.30(a), statutory damages for a knowing or willful violation in the amount up to $1,000 pursuant to California Civil Code § 1788.30(b), and reasonable attorney's fees and costs pursuant to California Civil Code § 1788.30(c).

**COUNT II AS TO PHH'S VIOLATION OF THE**

**FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e, 1692f**

**(By Mr. Torliatt on behalf of the Nationwide Class)**

87.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he purchased a home in California by mortgage primarily for personal, family, or household use.

88.     PHH is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because as a servicer it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another. Also, PHH began servicing Plaintiff's mortgage while it was in default, according to the terms of Plaintiff's note and mortgage, so none of the exceptions under 15 U.S.C. § 1692a applies.

89.     PHH is a "debt collector" as defined by 15 U.S.C. § 1692a(6) on Plaintiff's loan because every month, from April 11, 2019 to present, it collected Plaintiff's loan payments on behalf of Fannie Mae and Argent.

90.     PHH violated 15 U.S.C. § 1692f when it collected Pay-to-Pay fees not owed and not expressly authorized by the agreement creating the debt and in excess of the amount disbursed, inuring a benefit to PHH.

91.     PHH violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character, and status of the Plaintiff's mortgage debt.

92.     As a result of PHH's violation of 15 U.S.C. §§ 1692e–f, Plaintiff was harmed monetarily and is entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692k, together with reasonable attorney's fees and costs.

**COUNT III AS TO DEFENDANTS' VIOLATION OF THE "UNLAWFUL" PRONG OF THE CALIFORNIA UNFAIR PRACTICES ACT § § 17000, 17200 *et seq* ("UCL")**

**(By Mr. Torliatt on behalf of California Class)**

93.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

94.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

95.     As described in detail above, Ocwen's conduct described herein violates the Rosenthal Act. PHH's conduct described herein violates the Rosenthal Act. These violations are sufficient to support Plaintiff's claim under the unlawful prong of the UCL.

96.     As a result of the conduct above, Defendants have been unlawfully enriched at the expense of Plaintiff and members of the California Class by obtaining revenues and profits that it would not have otherwise obtained absent its unlawful conduct.

97.     Through its unlawful acts and practices, Defendants have improperly obtained money from Plaintiff and the members of the California Class. As such, Plaintiff requests that the Court cause Defendants to restore the money to Plaintiff and members of the California Class, and to enjoin Defendants from continuing to violate the UCL in the future. Otherwise, Plaintiff and members of the California Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT IV AS TO DEFENDANTS' BREACH OF CONTRACT**

**(By Mr. Torliatt on behalf of California Class)**

98.     On or about December 14, 2005, Mr. Torliatt entered into a loan and Deed of Trust with Argent with respect to his home.

99.     The servicing rights to Mr. Torliatt's loan were assigned to Ocwen and then to PHH. Ocwen and PHH collected payments on Mr. Torliatt's loan on behalf of Argent.

100.     As assignees of the servicing rights, Ocwen and PHH stepped into the shoes of Argent as to servicing obligations and became the servicer (sub-servicer) of Mr. Torliatt's loan.

As such they became parties to the Deed of Trust with Mr. Torliatt, by assignment from Argent and/or Fannie Mae (as sub-servicer).

101.    Mr. Torliatt's Deed of Trust expressly obligates assignees to comply with the terms of the deed of trust. Under the heading "13. Joint and Several Liability; Co-signers; Successors and Assigns Bound," it states: "The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." Exhibit A at 12, ¶ 13.[4]

102.    Defendants' demand for payment of Pay-to-Pay fees is a breach of the Deed of Trust, which does not mention Pay-to-Pay fees as one of the many charges that the lender, or loan servicer acting on behalf of the lender, may collect. There is simply no provision in the mortgage that allows Defendants to collect Pay-to-Pay fees.

103.    Indeed, Defendants' demand for payment of Pay-to-Pay fees is a direct breach of Paragraph 16 of the Deed of Trust: "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located." *See* Exhibit A, ¶ 16. Federal debt collection law prohibits the collection of any amount incidental to the principle obligation unless that amount is *expressly* stated in the loan agreement. *See* 15 U.S.C. § 1692f(1) (prohibiting the "collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) **unless such amount is expressly authorized by the agreement creating the debt or permitted by law**." (emphasis added)). Ocwen's collection of Pay-to-Pay fees violated both the FDCPA and Rosenthal Act.

104.    Defendants' demands for payment of Pay-to-Pay fees is a direct breach of Paragraph 14 of its Deed of Trust, "Uniform Covenants" section, stating that lender may not charge fees prohibited by "Applicable Law." The Agreement defines "Applicable Law" in Paragraph I as "all controlling applicable federal, state, and local statutes, regulations,

---

[4] Section 20 provides that where "the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." In other words, the servicer is bound by the terms of the mortgage and owes contractual duties to the borrower.

ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Exhibit A, ¶ 14. For Mr. Torliatt's loan, Applicable law includes the FDCPA as controlling federal law, and the Rosenthal Act as controlling state law.

105.    By charging the Pay-to-Pay fees that are expressly prohibited by the Rosenthal Act, Ocwen has violated Paragraph 14 of Plaintiff's Deed of Trust.

106.    By charging Pay-to-Pay fees that are expressly prohibited by FDCPA and Rosenthal Act, PHH has violated Paragraph 14 of Plaintiff's Deed of Trust.

107.    To the extent that Defendants claim there is any allowance of fees to be charged under section 14 of the Mortgage Agreement, those charges are preference and limited to those charged when the borrower is in default. Even if the Pay-to-Pay fees were default-related fees, which they are not, Defendants' demand for payment of Pay-to-Pay fees is a direct breach of Paragraph 9 of the Deed of Trust, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, stating that only "amounts *disbursed* by the lender under this Section 9 will become debt of the borrower." Exhibit A, ¶ 9 (emphasis added). Defendants collected more than the amount they disbursed to Western Union to process the Pay-to-Pay transactions.

108.    Further, Fannie Mae's servicing guidelines, which Defendants must follow when sub-servicing Fannie Mae loans, prohibit the collection of any fees on routine borrower collections, including the Pay-to-Pay fees charged by Defendants. *See* Fannie Mae Servicing Guide A2-3-05 ("The servicer is not authorized to charge the borrower fees relating to the following activities: facilitating routine borrower collections.").

109.    Because the "Governing Law" (¶16), "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" (¶9), and "Applicable Law" (¶14) provisions are contained in the "Uniform Covenants" section, Ocwen has breached the contract on a class-wide basis.

110.    Defendants' Uniform Covenants in its Deed of Trust prohibit fees not allowable under applicable law.

111.    Fannie Mae's Servicing Guide, section A2-3-05, which must be adhered to by Defendants as the loan sub-servicer, prohibits all fees charged relating to routine borrower collections.

112.    Defendants breached the contracts with Mr. Torliatt and members of the California Class when they charged Pay-to-Pay fees not agreed to in the Deed of Trust.

113.    Alternatively, Defendants breached the contracts with Mr. Torliatt and members of the California Class when they charged Pay-to-Pay fees in excess of the amounts actually disbursed by Defendants to pay for the cost of the Pay-to-Pay Transactions.

114.    Additionally, in every contract made in California, including Mr. Torliatt's Deed of Trust, there is an implied covenant of good faith and fair dealing.

115.    One of the purposes of Mr. Torliatt's Deed of Trust is to inform him clearly of the fees that may be charged on his mortgage loan. Where the Deed of Trust is silent on a specific fee or amount, such as default-related fees, the Deed of Trust protects Mr. Torliatt by capping those fees to the amounts actually disbursed (Exhibit A, ¶ 9), e.g. the actual cost of the fee.

116.    Defendants know the actual cost of Pay-to-Pay transactions is much less than the amount of Pay-to-Pay fees Defendants collected from Mr. Torliatt and other California borrowers. Defendants intentionally failed to disclose the amount of their profit from Mr. Torliatt and other borrowers so that those borrowers will not challenge the imposition of Pay-to-Pay fees or threaten Defendants' profit center.

117.    Defendants deliberately leveraged their superior position as Mr. Torliatt's loan servicer to create a profit center through the collection of Pay-to-Pay fees and in doing so, violated the implied covenant of good faith and fair dealing of the Deed of Trust. Mr. Torliatt and members of the California Class have been harmed by these breaches.

**JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES**

118.    Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

119.    Plaintiff reserves the right to amend his Second Amended Consolidated Class Action Complaint and add a claim for punitive damages.

## RELIEF REQUESTED

WHEREFORE Mr. Torliatt respectfully requests this Court enter judgment against Defendants for all of the following:

a.    That Mr. Torliatt and all members of the Classes be awarded actual damages, including but not limited to all fees improperly charged and forgiveness of all amounts not properly owed;

b.    That Mr. Torliatt and members of the Classes be awarded statutory damages;

c.    That Mr. Torliatt and members of the Classes be awarded costs and attorney's fees;

d.    That the Court enter an order that Defendants and its agents, or anyone acting on its behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

e.    That the Court issue an injunction restraining Defendants from future collections, and attempted collections, of Pay-to-Pay fees;

f.    That the Court certify Mr. Torliatt's claims and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure; and

g.    Such other and further relief as the Court may deem just and proper.

Dated: May 1, 2020

/s/ Lee Lowther
Edwin Lee Lowther (*admitted pro hac vice*)
llowther@cbplaw.com
Hank Bates (SBN 167688)
hbates@cbplaw.com
Randall K. Pulliam (*admitted pro hac vice*)
rpulliam@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR, 72201
Tel. 501-312-8500
Fax 501-312-8505

1

2
Don F. Livornese (State Bar No. 125,934)
donl@ruyakcherian.com
3
RUYAK CHERIAN LLP
222 N. Pacific Coast Highway, Suite 2000
El Segundo, CA 90245
4
Tel. 310-586-7689

5
James Lawrence Kauffman
jkauffman@baileyglasser.com
6
BAILEY GLASSER, LLP
1055 Thomas Jefferson Street, NW Suite 540
7
Washington, DC 20007
Tel - (202) 463-2101
8

9
*Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2020, I caused a copy of the foregoing to be electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

*/s/ Lee Lowther*
LEE LOWTHER