Hank Bates (SBN 167688)
hbates@cbplaw.com
Randall K. Pulliam (*admitted pro hac vice*)
rpulliam@cbplaw.com
Edwin Lee Lowther (*admitted pro hac vice*)
llowther@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR 72201
Tel. 501-312-8500
Fax 501-312-8505

Don F. Livornese (State Bar No. 125,934)
donl@ruyakcherian.com
RUYAK CHERIAN LLP
222 N. Pacific Coast Highway, Suite 2000
El Segundo, CA 90245
Tel. 310-586-7689

James Lawrence Kauffman (*admitted pro hac vice*)
jkauffman@baileyglasser.com
BAILEY GLASSER, LLP
1055 Thomas Jefferson St, NW Suite 540
Washington, DC 20007
Tel. (202) 463-2101

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*San Francisco Division*

| | | |
|---|---|---|
| LAWRENCE TORLIATT, on behalf of himself and all others similarly situated, | ) | |
| | ) | **Case No. 3:19-cv-04303-WHO** |
| Plaintiff, | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | **NOTICE OF MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW** |
| Defendant. | ) | |
| | ) | |
| CONSOLIDATED WITH: | ) | Date: September 22, 2021 |
| | ) | Time: 2:30pm |
| *Lawrence Torliatt v. PHH Mortgage Corp.*, Case No. 3:19-cv-04356-WHO | ) | Courtroom: TBD |

Plaintiff gives notice to the Court and all counsel of record of his filing a Motion for Class Certification. Pursuant to the Court's scheduling order, Plaintiff files this motion on June 30, 2021, and notices the motion for a hearing on September 22, 2021, at 2:00 p.m. ECF No. 53.

Plaintiff seeks an order certifying the following class under Federal Rule of Civil Procedure 23(a) & (b)(3):

> All persons in the United States (1) with a Security Instrument on a residential loan securing a property located in the State of California, (2) that is or was serviced by Ocwen or PHH, (3) who were charged one or more Pay-to-Pay fee, (4) whose Security Instrument did not expressly allow for the charging of a Pay-to-Pay fee at the time the Pay-to-Pay fee was charged, and (5) who were not class members in *McWhorter v. Ocwen Loan Servicing, LLC*, 2:15-cv-01831-MHH (N.D. Ala.).

Plaintiff further moves the Court to appoint him class representative and to appoint his counsel—Randall K. Pulliam, Lee Lowther, and James L. Kauffman—Class counsel.

In support of this motion, Mr. Torliatt relies on the arguments made and authorities cited in the Memorandum of Law accompanying this Notice of Motion. Mr. Torliatt further relies on the Declaration of Lee Lowther, and exhibits thereto, filed contemporaneously with this Notice of Motion and Memorandum of Law.

# TABLE OF CONTENTS

Page

I. Introduction .......... 2

II. Statement of Facts .......... 3

A. The Class .......... 5

B. The Class Claims .......... 5

III. Legal Standard .......... 7

IV. Argument .......... 8

A. Rule 23(a)'s Requirements are Satisfied .......... 8

1. The Numerosity Requirement is Satisfied .......... 8

2. The Commonality Requirement is Met .......... 8

3. Typicality .......... 10

4. Adequacy .......... 10

B. The Proposed Class Satisfies Rule 23(b)(3) .......... 11

1. Common Questions Predominate .......... 12

2. A class action is a superior vehicle for litigating this action .......... 13

V. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........ 11

*Ballard v. Equifax Check Services, Inc.*,
158 F. Supp. 2d 1163 (E.D. Cal. 2001) ........ 15

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ........ 13, 15

*Castro v. ABM Industries, Inc.*,
325 F.R.D. 332 (N.D. Cal. 2018) ........ 14

*Corona v. PNC Financial Services Group, Inc.*,
No. 220CV06521MCSSPX, 2021 WL 1218258 (C.D. Cal. Mar. 16, 2021) ........ 6

*DiFlauro v. Bank of America, N.A.*,
No. 2:20-cv-5692-DSF-SK, slip op. (C.D. Cal. Dec. 2, 2020) ........ 6

*Elbert v. Roundpoint Mortgage Servicing Corporation*,
No. 20-CV-00250-MMC, 2020 WL 6940941 (N.D. Cal. Nov. 25, 2020) ........ 6

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........ 11

*Farar v. Bayer AG*,
No. 14-CV-04601-WHO, 2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) ........ 8, 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........ 10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ........ 10

*Langston v. Gateway Mortgage Group, LLC*,
5:20-cv-01902, 2021 WL 234358 (C.D. Cal. Jan. 15, 2021) ........ 6

*Larson v. Trans Union LLC*,
No. 12-CV-05726-WHO, 2015 WL 3945052 (N.D. Cal. June 26, 2015) ........ 16

*Lembeck v. Arvest Central Mort. Co.*,
498 F. Supp. 3d 1134 (N.D. Cal. 2020) ........ 5, 6

*Lindblom v. Santander Consumer USA, Inc.*,
No. 1:15-CV-990-LJO-BAM, 2016 WL 2841495 (E.D. Cal. May 9, 2016) ........ 6

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) .......... 7

*McWhorter v. Ocwen Loan Servicing, LLC*,
Case No. 2:15-cv-01831-MHH (N.D. Ala.) .......... 5, 13

*Morris v. PHH Mort. Corp.*,
Case No. 20-60633-CIV-SMITH (S.D. Fla.) .......... 14

*In re Rubber Chemicals Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) .......... 8

*Sanders v. LoanCare LLC*,
18-CV-09376, 2019 WL 441964 (C.D. Cal. Feb. 1, 2019) .......... 5, 6

*Simmet v. Collection Consultants of California*,
No. CV1602273BROPLAX, 2016 WL 11002359 (C.D. Cal. July 7, 2016) .......... 6

*Stolicker v. Muller, Muller, Richmond, Harms, Myers, Sgroi, P.C.*,
No. 1:04-CV-733, 2006 WL 3386546 (W.D. Mich. Nov. 22, 2006) .......... 15

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) .......... 12

*Vaquero v. Ashley Furniture Indus., Inc.*,
824 F.3d 1150 (9th Cir. 2016) .......... 12

*Wal–Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 7, 8, 9

*Wolin v. Jaguar Land Power North America, LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 12, 14

**California Cases**

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*,
111 Cal. App. 4th 102 (2003) .......... 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .......... 15

*Medrazo v. Honda of North Hollywood*,
205 Cal. App. 4th 1 (2012) .......... 15

**Federal Statutes**

15 U.S.C.
§ 1692f(1) .......... 6, 9, 15
§ 1692k(a)(1) .......... 15
§ 1692k(a)(2)(B) .......... 15

Rosenthal Act....................*passim*

Rosenthal Act
§ 1788.17....................6, 15

**California Statutes**

Cal. Bus. & Prof. Code
§ 17203....................15

Cal. Civ. Code
§ 1788.14(b)....................5, 6
§§ 1788.62(a)....................14
§ 17200....................6

**Rules**

Fed. R. Civ. P. 23....................7, 8

Fed. R. Civ. P. 23(a)....................*passim*

Fed. R. Civ. P. 23(a)(1)....................8

Fed. R. Civ. P. 23(a)(2)....................8, 9, 12

Fed. R. Civ. P. 23(a)(3)....................10

Fed. R. Civ. P. 23(a)(4)....................10

Fed. R. Civ. P. 23(b)....................7

Fed. R. Civ. P. 23(b)(3)....................*passim*

Fed. R. Civ. P. 23(g)....................11

## I. Introduction

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and PHH Mortgage Corp. ("PHH") (collectively "Defendants"), violated the Rosenthal Fair Debt Collection Practices Act and Unfair Competition Law when they collected unauthorized fees from Plaintiff and members of the putative classes for making their mortgage payments online or over the phone ("Pay-to-Pay fees"). Mr. Torliatt seeks to represent the following class of persons who paid these illegal fees:

> All persons in the United States (1) with a Security Instrument on a residential loan securing a property located in the State of California, (2) that is or was serviced by Ocwen or PHH, (3) who were charged one or more Pay-to-Pay fee, (4) whose Security Instrument did not expressly allow for the charging of a Pay-to-Pay fee at the time the Pay-to-Pay fee was charged, and (5) who were not class members in *McWhorter v. Ocwen Loan Servicing, LLC*, 2:15-cv-01831-MHH (N.D. Ala.).

The proposed class easily meets all of the requirements of Rules 23(a) and (b)(3). There can be no dispute that numerosity is met — data produced by the Defendants shows that Ocwen collected Pay-to-Pay fees from over [redacted] accounts, and PHH collected such fees from over [redacted] accounts.

Moreover, because this dispute is based on loan documents with uniform material terms and on Defendants' standard debt-collection practices, it presents no individual issues that predominate over the issues of fact and law common to all Class members. Mr. Torliatt's claims are ideally suited for class certification and resolving the straightforward factual and legal issues through the class mechanism is superior to litigating these issues thousands of times. Presenting the legal issues on behalf of a class will allow the Court to determine, in one fell swoop on a class-wide basis: (1) whether Defendants violated the Rosenthal Act when they collected fees for online and telephone mortgage payments where standard mortgages do not expressly authorize such fees and no law permits them; (2) whether Defendants violated the Rosenthal Act by collecting such fees because they are fees for Defendants' collection services or expenses; and (3) whether Defendants' conduct violated the "unlawful" prong of the Unfair Competition Law.

These issues are especially susceptible to class-wide proof because they depend on the interpretation of standard contract provisions and statutory language. The same facts and law that apply to Plaintiff's claims will apply to the rest of the proposed class. For these reasons, Plaintiff moves the Court to certify this action under Rules 23(a) and (b)(3), to appoint him class representative, and to appoint his counsel class counsel.

## II. Statement of Facts

Plaintiff Lawrence Torliatt took out a loan to refinance the purchase of his home in Petuluma, California. Ex 1.[1] The Note and Deed of Trust that secured the loan were each a "Uniform Instrument" promulgated by Fannie Mae and Freddie Mac. Ex. 1; Ex. 2 (Deed of Trust).[2] These form mortgage agreements contain uniform covenants that are ubiquitous in the mortgage-lending industry. Ex. 4 at 5, ¶15. This is so because the servicing rights to mortgages, including the right to collect payments under the mortgages, are frequently packaged into securities and sold on the secondary market. *Id.* For this secondary market to exist, the mortgage terms must be uniform, as it would be practically impossible for a servicer to read every term of every mortgage it acquires and to service each mortgage in compliance with its own unique terms.

Pertinent here, no uniform covenant expressly authorizes, or even mentions, the collection of payment-processing fees from borrowers. Exs. 1–3. Despite this lack of express authorization, PHH and Ocwen collected fees of $7.50 from Mr. Torliatt each time he made a mortgage payment online. Ex. 5. In addition to online fees, Ocwen collected fees of up to $19.50 from borrowers who made their payments with a live agent and fees of up to $12.00 for borrowers who made their payments using an automated interactive voice recognition system ("IVR"). Ex. 6; Ex. 7; Ex. 8 at 86:7–87:7. Likewise, PHH collected fees of $17.50 from borrowers who made their payments with a live agent and of $10.00 for borrowers who made their payments using the

[1] All exhibits cited in this motion are attached to the Declaration of Lee Lowther that was contemporaneously filed with this motion.

[2] After his note was originated, Mr. Torliatt entered loan modifications that modified the interest and monthly-payment terms of his notes. These modifications were, likewise, made on uniform forms and did not mention, much less expressly authorize, the collection of Pay-to-Pay fees. Ex.

IVR system. Ex. 9; Ex. 10. Mr. Torliatt's loan payment is due on the first of every month (Ex. 1), and each time Defendants collected a Pay-to-Pay fee from Mr. Torliatt, he was making a mortgage payment on or past the payment's due date. Ex. 5.

Pursuant to their respective Master Servicing Agreements with Western Union, as periodically amended, Defendants [redacted]. Ex. 11 at 23:20–26:7 & 27:7–22. At the end of each month, [redacted], Defendants [redacted] from Western Union. *Id*. For Ocwen, Western Union [redacted]; for PHH, the fee was never more than [redacted]. *Id.* at 43:6–66:6. In November 2019, [redacted]. *Id.* at 29:8–11 & 30:6–10.

As would be expected of a mortgage servicer that services millions of loans across the United States, Defendants maintain robust data about the loans they service. For instance, Defendants' data [redacted]. *Id.* at 34:1–37:9; Ex. 8 at 89:6–92:4 & 226:9–21.

By culling its data, each Defendant produced a spreadsheet that listed each Pay-to-Pay fee it collected from a borrower whose property address was located in California during the class period. During the four years before suit was filed against Ocwen, it collected a Pay-to-Pay fee from borrowers on [redacted]. Ex. 13. During the four years before suit was filed against PHH, it collected a Pay-to-Pay fees from borrowers on [redacted]. Ex. 12. During the class period, Defendants have begun requesting that California borrowers [redacted]

[redacted]. Ex. 8 at 120:6 & 156:1–163:9.

**A. The Class**

Mr. Torliatt moves to certify a class defined as follows:

All persons in the United States (1) with a Security Instrument on a residential loan securing a property located in the State of California, (2) that is or was serviced by Ocwen or PHH, (3) who were charged one or more Pay-to-Pay fee, (4) whose Security Instrument did not expressly allow for the charging of a Pay-to-Pay fee at the time the Pay-to-Pay fee was charged, and (5) who were not class members in *McWhorter v. Ocwen Loan Servicing, LLC*, 2:15-cv-01831-MHH (N.D. Ala.).

**B. The Class Claims**

On behalf of the Class Mr. Torliatt brings claims under the Rosenthal Act and the Unfair Competition Law. To prevail on his Rosenthal Act claims, Mr. Torliatt must prove that (1) he was a "debtor"; (2) subject to "debt collection activity" arising from a "debt"; (3) that Defendants are each a "debt collector"; and (4) that each Defendant violated a provision of the Rosenthal Act. *Sanders v. LoanCare LLC*, 18-CV-09376, 2019 WL 441964, at *2 (C.D. Cal. Feb. 1, 2019). Here, Mr. Torliatt claims Defendants violated the Rosenthal Act by illegally "collecting or attempting to collect from the debtor the whole or any part of the debt collectors fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b). Throughout this litigation, Defendants have consistently characterized Internet and phone-payment methods as a "service" in connection with collecting mortgage payments. ECF No. 36 at 18–19 & 27;[3] Ex. 8 at 199:23–200:2; Ex. 13 at 14:16–17. The plain language of the Rosenthal Act prohibits Defendants from collecting a fee for a "service" provided in debt collection. *Lembeck v. Arvest Central Mort. Co.*, 498 F. Supp. 3d 1134, 1137 (N.D. Cal. 2020) (holding under identical facts

[3] Pinpoint citations to the record refer to the pagination stamped at the top of each page by the CM/ECF system.

alleged here that borrower stated a claim under section 1788.14(b) "[b]ecause the fee is a charge for providing the IVR-based collection service and, for the reasons just discussed, is not 'permitted by law[].'"); *Langston v. Gateway Mortgage Group, LLC*, 5:20-cv-01902, 2021 WL 234358, at *4 (C.D. Cal. Jan. 15, 2021) (same).

Mr. Torliatt also brings a claim for violations of Section 1788.17 of the Rosenthal Act, which prohibits "debt collectors" from engaging in conduct prohibited by the federal Fair Debt Collection Practices Act. Cal. Civ. Code § 1788.17. Specifically, this tie-in provision prohibits debt collectors from collecting "any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Numerous federal courts in California, including this one, have ruled that the facts Mr. Torliatt has pleaded, and now has evidence to sustain, constitute violations of Section 1788.17 of the Rosenthal Act. *See Corona v. PNC Financial Services Group, Inc.*, No. 220CV06521MCSSPX, 2021 WL 1218258, at *4 (C.D. Cal. Mar. 16, 2021); *Langston v. Gateway Mortgage Group, LLC,* 2021 WL 234358, at *3 (C.D. Cal. 2021); *Elbert v. Roundpoint Mortgage Servicing Corporation,* No. 20-CV-00250-MMC, 2020 WL 6940941, at *3 (N.D. Cal. Nov. 25, 2020)*; Lembeck v. Arvest Central Mortgage Co*., 498 F.Supp.3d 1134, 1136 (N.D. Cal. 2020); *Sanders v. LoanCare, LLC*, 2019 WL 441964, at *5–6 (C.D. Cal. Feb. 1, 2019); *Simmet v. Collection Consultants of California*, No. CV1602273BROPLAX, 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016); *Lindblom v. Santander Consumer USA, Inc.*, No. 1:15-CV-990-LJO-BAM, 2016 WL 2841495, at *7 (E.D. Cal. May 9, 2016); *See also DiFlauro v. Bank of America, N.A.*, No. 2:20-cv-5692-DSF-SK, slip op. at 8–11 (C.D. Cal. Dec. 2, 2020), filed on the record at ECF No. 113-2.

Finally, Mr. Torliatt brings claims under the "unlawful" prong of the Unfair Competition Law, seeking restitution of all monies Defendants have illegally collected and retained from members of the Class as a result of their unlawful practice of collecting Pay-to-Pay fees and to enjoin Defendants' continuing illegal conduct. Cal. Civ. Code § 17200.

## III. Legal Standard

Federal Rule of Civil Procedure 23 governs class actions. "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 588 (9th Cir. 2012) (internal citation and quotation marks omitted). The burden is on the party seeking certification to show, by a preponderance of the evidence, that the prerequisites have been met*. See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Specifically, Rule 23(a) requires a showing that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The party seeking certification must then establish that one of the three grounds for certification applies. See Fed. R. Civ. P. 23(b). Here, Mr. Torliatt seeks certification under Rule 23(b)(3), which provides that a class action may be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action."

*Id.*

"A court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 465–66 (internal citation and quotation marks omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466; *Farar v. Bayer AG*, No. 14-CV-04601-WHO, 2017 WL 5952876, at *3–4 (N.D. Cal. Nov. 15, 2017).

## IV. Argument

### A. Rule 23(a)'s Requirements are Satisfied

#### 1. The Numerosity Requirement is Satisfied

Rule 23(a)(1) requires that the "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). Courts generally find that numerosity is satisfied if the class includes forty or more members. *Farar*, 2017 WL 5952876, at *5 (internal citations omitted).

As discussed above, Ocwen collected Pay-to-Pay fees from borrowers on more than [redacted] unique loans, and PHH collected those fees from borrowers on more than [redacted] loans. It would be impracticable to join more than [redacted] individuals in one action. Therefore, the numerosity requirement of Rule 23(a)(1) is satisfied.

#### 2. The Commonality Requirement is Met

Commonality requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Mr. Torliatt must show that the class members have suffered "the same injury"—which means that the class members' claims must "depend upon a common contention" which is of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Dukes*, 564 U.S. at 350 (internal quotation

marks and citation omitted). The plaintiff must demonstrate not merely the existence of a common question, but rather "the capacity of classwide proceedings to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks and emphasis omitted). For purposes of Rule 23(a)(2), "even a single common question will do." *Id.* at 359 (internal quotation marks and modifications omitted).

The Class claims here contain numerous common questions, the answers to which will drive this litigation forward:

- Does California law prohibit the collection of Pay-to-Pay fees from mortgage borrowers where their notes and deeds of trust do not expressly authorize the collection of those fees?
- Do the uniform covenants in standard notes and deeds of trust expressly authorize the collection of Pay-to-Pay fees?
- Does any law permit Defendants to collect Pay-to-Pay fees from members of the Class?
- When Defendants collected Pay-to-Pay fees, were they collecting from the debtor "the whole or any part of the [their] fee or charge for services rendered, or other expense incurred by the[m] [] in the collection of the consumer debt"?
- Is the collection of Pay-to-Pay fees conduct that violates 15 U.S.C. § 1692f(1) and, therefore, the Rosenthal Act?
- Did the collection of Pay-to-Pay fees inure to Defendants' benefit?
- Is a mortgage payment "due and owing" when paid on or after the date it is due?
- Is the collection of a Pay-to-Pay fee in connection with a mortgage payment made on or after the date it is due "collection activity" under the Rosenthal Act?

The answer to any one of these common questions will drive this litigation forward. Whether the collection of Pay-to-Pay fees is the type of conduct that the Rosenthal Act prohibits can, and should, be answered once for all Class members. Moreover, as discussed above, [redacted]

[redacted]. Thus, the answers to which Class members are "debtors" whose debts were "due and owing" at the time Defendants collected Pay-to-Pay fees is susceptible to common proof. The answer to any one of these questions can be determined in one stroke for each member of the Class and will drive the resolution of this litigation forward.

**3. Typicality**

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) assures "that the interest of the named representative aligns with the interests of the rest of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation marks omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Farar*, 2017 WL 5952876, at *6 (internal citation and quotation marks omitted).

Mr. Torliatt's claims are typical of other members of the Class—they are all residential loan borrowers on homes located in California from whom Defendants collected an extra fee when they each made their mortgage payments. As with all Class members, Mr. Torliatt took out a loan for personal or household use on his primary residence that was secured by a mortgage. Each time Defendants collected a Pay-to-Pay fee from Mr. Torliatt, he was making a mortgage payment on or after the date on which it was due. His claims are typical of Class members' claims.

**4. Adequacy**

Finally, to establish adequacy under Rule 23(a)(4), named plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two

questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks omitted).

Mr. Torliatt has more than adequately represented the interests of the class. He has reviewed the complaints filed in this action,[4] understands the factual bases for his claims,[5] has spent between twenty-five and thirty hours gathering documents responsive to Defendants' requests for production,[6] communicated regularly with counsel concerning the status of this action, met with counsel for six to eight hours to prepare for his deposition,[7] and gave an hours-long deposition. Mr. Torliatt has and will continue to vigorously represent the interests of the class.

Likewise, class counsel has and will continue to vigorously represent the class. Counsel are experienced in the prosecution of consumer class actions and have diligently prosecuted this case. Indeed, the Court has already appointed proposed class counsel as interim class counsel under Rule 23(g) to protect the interests of California borrowers. ECF No. 93 at 6.

**B. The Proposed Class Satisfies Rule 23(b)(3)**

Common issues of law and fact predominate in this action, and resolving these common questions for all members in one stroke is superior to other methods of adjudicating the Class's claims. Rule 23(b)(3) exists "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997) (internal citation, quotation marks, and ellipsis omitted). A court can certify a class under Rule 23(b)(3) when it finds that "the questions of law or fact common to class members predominate over any question affecting only individual

---

[4] Ex. 14 at 69:1–16.
[5] *Id.* at 57:10–58:7; 66:18–67:20.
[6] *Id.* at 68:9–25.
[7] *Id.* at 11:1–12:14.

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This standard is readily satisfied here.

**1. Common Questions Predominate**

A court can certify a class under Rule 23(b)(3) when "one or more of the central issues in the action are common to the class and can be said to predominate[.]" *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016). This is true even if "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* There is "substantial overlap" between Rule 23(a)(2) commonality and Rule 23(b)(3) predominance. *Wolin v. Jaguar Land Power North America, LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). The Ninth Circuit has repeatedly held that individualized issued related to damages calculations cannot by themselves defeat predominance. *See e.g., Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1155 (9th Cir. 2016).

Nearly all elements of Mr. Torliatt's and Class members' claims hinge on common questions. Defendants likely will attempt to argue that determining whether a Class member's mortgage documents expressly authorize Pay-to-Pay fees is a predominating individual issue. But individual questions related to mortgage terms poses no barrier to class certification.

Mr. Torlaitt's counsel retained Patricia Forcier, an expert with over 40 years of experience in preparation, analysis, and quality control of security instruments to be used by lenders in California. Ex. 4, ¶ 4. Ms. Forcier reviewed Mr. Torliatt's Deed of Trust and Note, recognizing them as standard forms used by lenders in California based on her extensive experience analyzing these forms during quality control and due diligence reviews. *Id.* at ¶ 15. Uniformity of these types of instruments are required for the sale of mortgage loans into the secondary market. *Id.* The language used in notes and deeds of trust for Fannie Mae ("FNMA"), Freddie Mac ("FHLMC"), the Federal Housing Administration ("FHA"), the Veterans Administration ("VA") and the U.S. Department of Agriculture ("USDA") loans has been standard since the 1970s. *Id.* at ¶¶ 16, 18, 20. In her 40-plus years of experience, consisting of a review of thousands of security instruments in California, Ms. Forcier has never seen a FNMA, FHLMC, FHA, VA,

or USDA security instrument that provides that the lender, any subsequent mortgage servicer, or noteholder may collect a fee in connection with online or phone payment processing. *Id.* at ¶¶ 17, 19, 21. Such language is absent from these industry-standard forms.

Indeed, for that reason, Defendants [redacted]—including as a part of the *McWhorter* settlement—and maintain robust data about which borrowers [redacted]. From that date forward, the Class member will not be entitled to damages. Determining who these Class members are will be a ministerial task and is not an issue that predominates over the overwhelmingly common questions in this action.

**2. A class action is a superior vehicle for litigating this action**

Rule 23(b)(3)'s superiority element is similarly met. Courts must consider the following factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The Ninth Circuit requires courts to "hew[] closely to the text" of Rule 23(b)(3). *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) (rejecting the contention that superiority imposes an "administrative feasibility" requirement). Here, each factor supports certification.

***First***, Class members' average damages are modest. Even were a Class member to have paid $19.50 every month during the Class period, the maximum amount of any individual Class

member's damages claim would be $1,404.00. *See Castro v. ABM Industries, Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018) (finding "relatively modest" a "maximum of approximately $2,352" in individual damages for class members and that "litigation costs would dwarf potential recovery") (internal citation and quotation marks omitted). And while class members whose claims accrued on or after July 26, 2018, could potentially recover greater statutory damages under the RFDCPA through individual actions, those damages would be capped at $1,000. *See* Cal. Civ. Code §§ 1788.62(a). As "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication.").

***Second***, as the Court is aware, there is a case in the Southern District of Florida where the parties have moved for preliminary approval of a settlement on behalf of a class that incompletely overlaps with the Class Mr. Torliatt seeks to represent here. That action is *Morris v. PHH Mort. Corp.*, Case No. 20-60633-CIV-SMITH (S.D. Fla.). *See* ECF No. 93. Since the Court appointed undersigned counsel as interim Class counsel, the United States Department of Justice and a coalition of thirty-three state Attorneys General have intervened in the *Morris* action to oppose preliminary approval of the flawed settlement, the primary feature of which is to amend the notes of all settlement class members to expressly authorize Pay-to-Pay fees. Mr. Torliatt believes the settlement is unlikely to be approved over this opposition. But even if the settlement is approved, it does not completely overlap with the Class here, and *Morris* class members can be excised from the Class if the settlement receives approval.

***Third***, all claims in this putative class action are based on California law and stem from mortgages on California homes. This forum is desirable.

***Fourth,*** manageability presents no obstacle to class certification. As explained above, Defendants' liability towards all class members will be decided based on common evidence. Moreover, damages calculations are straightforward. The Rosenthal Act incorporates the FDCPA's penalty provisions by reference. Cal. Civil Code § 1788.17. Consequently, Class members who paid the online fee from July 26 or 30, 2018, respectively for Ocwen and PHH,

onwards will be entitled to a *pro rata* share of a statutory damages award of up to $500,000, 15 U.S.C. § 1692k(a)(2)(B), and actual damages equal to fees paid. 15 U.S.C. § 1692k(a)(1); *Stolicker v. Muller, Muller, Richmond, Harms, Myers, Sgroi, P.C.*, No. 1:04-CV-733, 2006 WL 3386546, *3-4 (W.D. Mich. Nov. 22, 2006) ("[T]he text of § 1692k(a) clearly indicates that the limitation on damages in subpart (a)(2)(B)(ii) only applies to statutory damages.").

Class members from whom Defendants collected a Pay-to-Pay fee from July 26 or 30, 2015, respectively for Ocwen and PHH, onwards are also entitled to full restitution under the UCL. The UCL provides that "the Court may make such orders or judgments … as may be necessary to restore to any person in interest any money or property … which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. Restitution orders "compel[] a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144–45 (2003). Full restitution is appropriate where—as here—the violating defendant was prohibited by law from collecting any of the amount paid. *Ballard v. Equifax Check Services, Inc.*, 158 F. Supp. 2d 1163, 1177 (E.D. Cal. 2001) (in a Section 1692f(1) case, holding that "[the defendant] is liable to class members who actually paid a[n] [unlawful] service charge and must pay [UCL] restitution of the amount paid as a service charge, plus pre-judgment interest."); *see also People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal. App. 4th 102, 132 (2003) (tenants who were charged rents that exceeded an ordinance were entitled to restitution of all above-ordinance rent money); *Medrazo v. Honda of North Hollywood*, 205 Cal. App. 4th 1, 13-15 (2012) (where a dealership violated a statute requiring disclosure of dealer-added charges, class members were entitled under the UCL to a refund of all such charges paid).

Finally, while ascertainability may factor into evaluation of a proposed definition of a class, the Ninth Circuit has never adopted an ascertainability requirement. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017). Nonetheless, district courts evaluate this factor, testing whether "[a] class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that

group to identify himself or herself as having a right to recover based on the description." *Larson v. Trans Union LLC*, No. 12-CV-05726-WHO, 2015 WL 3945052, at *14 (N.D. Cal. June 26, 2015).

Here, the proposed Class is readily ascertainable. Defendants have produced Excel spreadsheets identifying the California borrowers from whom each collected Pay to Pay fees since July 26 and 30, 2015. The spreadsheets [redacted]. In short, Defendants can, and have, identified all members of the Class and notice of this class may be mailed to each. The Class is ascertainable.

## V. CONCLUSION

For these reasons, Mr. Torliatt respectfully requests the Court grant his motion, appoint him class representative, and appoint his counsel class counsel.

Dated: June 30, 2021

*/s/ Lee Lowther*
Hank Bates (SBN 167688)
hbates@cbplaw.com
Randall K. Pulliam (admitted *pro hac vice*)
rpulliam@cbplaw.com
Edwin Lee Lowther (admitted *pro hac vice*)
llowther@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR, 72201
Tel. 501-312-8500
Fax 501-312-8505

Don F. Livornese (State Bar No. 125,934)
donl@ruyakcherian.com
RUYAK CHERIAN LLP
222 N. Pacific Coast Highway, Suite 2000
El Segundo, CA 90245
Tel. 310-586-7689

James L. Kauffman (admitted pro hac vice)
jkauffman@baileyglasser.com
BAILEY GLASSER, LLP
1055 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
Tel. 202-463-2101

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following, all known parties to each related action:

Kimberly Michelle Ingram
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
kingram@bradley.com

Michael R. Pennington
Zachary A. Madonia
Nicholas A. Danella
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
mpennington@bradley.com
zmadonia@bradley.com
ndanella@babc.com

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801
ssmith@bradley.com

Austin Benjamin Kenney
SEVERSON & WERSON, APC
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, CA 92612
abk@severson.com

Mary Kate Sullivan
Severson & Werson, APC
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
mks@severson.com

*/s/ Lee Lowther*
LEE LOWTHER