Hank Bates (SBN 167688)
hbates@cbplaw.com
Randall K. Pulliam (*admitted pro hac vice*)
rpulliam@cbplaw.com
Edwin Lee Lowther (*admitted pro hac vice*)
llowther@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR, 72201
Tel. (501) 312-8500
Fax (501) 312-8505

*Attorneys for Plaintiff*

Don F. Livornese (State Bar No. 125,934)
donl@ruyakcherian.com
RUYAK CHERIAN LLP
222 N. Pacific Coast Highway, Suite 2000
El Segundo, CA 90245
Tel. (310) 586-7689

James L. Kauffman (*admitted pro hac vice*)
jkauffman@baileyglasser.com
BAILEY GLASSER, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel. (202) 463-2101

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

*San Francisco Division*

| | |
|---|---|
| LAWRENCE TORLIATT,<br>on behalf of himself and<br>all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING,<br>LLC,<br>    Defendant.<br><br>CONSOLIDATED WITH:<br><br>Lawrence Torliatt v. PHH Mortgage<br>Corp., Case No. 3:19-cv-04356-WHO | Case No. 3:19-cv-04303-WHO<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**<br><br>The Honorable William H. Orrick |

## **TABLE OF CONTENTS**

I.     INTRODUCTION. ................................................................................................ 1

II.    SUMMARY OF THE PROCEEDINGS. .......................................................... 3

III.   SUMMARY OF THE PROPOSED SETTLEMENT. ....................................... 9
       A.    Settlement Benefits. ................................................................................ 9
       B.    Settlement Administrator .................................................................... 11
       C.    Notice. .................................................................................................. 12
       D.    Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) a Service
             Award. .................................................................................................. 13

IV.    PROPOSED SCHEDULE OF EVENTS. ........................................................ 13

V.     APPLICABLE LEGAL STANDARDS. .......................................................... 14

VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL. ....... 16
       A.    The Settlement Satisfies the Criteria for Preliminary Approval. ........... 16
             1.    The Settlement Was the Result of Arm's Length Negotiations Between the
                   Parties, Has No Obvious Deficiencies, and Treats Settlement Class Members
                   Equally. ....................................................................................... 16
             2.    The Settlement Falls Within the Range of a Reasonable Settlement While
                   Guaranteeing Settlement Class Members Tangible and Immediate Benefits
                   Without the Risks of Further Litigation. ..................................... 19
       B.    The Proposed Notice Program Is Adequate. ......................................... 22

VII.   CONDITIONAL DECERTIFICATION OF THE LITIGATION CLASS AND
       CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS
       APPROPRIATE. .............................................................................................. 23
       A.    The Class Is Sufficiently Numerous. ..................................................... 24
       B.    There Are Common Issues of Law or Fact Common to the Settlement Class. ....... 24
       C.    The Claims of Plaintiff Are Typical of the Claims of the Members of the
             Settlement Class. .................................................................................. 24
       D.    Plaintiff and Class Counsel Have Fairly and Adequately Represented the Interests
             of the  Settlement Class, and Will Continue to Do So. .......................... 25
       E.    The Common Questions of Law and Fact in this Action Predominate Over Any
             Individual Issues and a Class Action Is the Superior and Most Efficient Means to
             Adjudicate the Claims. ......................................................................... 26
             1.    Common Questions of Law and Fact Predominate. ...................... 26
             2.    A Class Action is the Superior Method of Adjudicating this Case. ....... 26

VIII.  CONCLUSION ............................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Adkins v. Facebook, Inc.*,
    No. C 18-05982 WHA, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) .......................... 16, 17

*Amchem Products Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................................... 27

*Amy Thomas-Lawson et al. v. Carrington Mortgage Services, LLC*,
    Case No. 21-55459 (9th Cir. 2021) ............................................................................... 6

*Armstrong v. Bd. Of Sch. Dir. Of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) (citation and internal quotation marks omitted), *overruled on
    other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ...................... 16

*Arredondo v. Sw. & Pac. Specialty Fin., Inc.*,
    No. 118CV01737DADSKO, 2022 WL 2052681 (E.D. Cal. June 7, 2022) .......................... 18

*Bolton v. U.S. Nursing Corp.*,
    No. C 12-4466 LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013)....................................... 18

*Churchill Village, L.L.C. v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................... 22, 23

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................... 16

*Deaver v. Compass Bank, et al.*,
    No. 13-cv-00222, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) .......................... 16, 17, 18

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................................... 26

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................... 17, 25, 26, 27

*Hanon v. Dataprods. Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................... 25

*Hendricks v. Starkist Co.*,
    No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) .......................... 19

*Ikuseghan v. Multicare Health Sys.*,
    No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015).......................... 25

-ii-

*In re Apple Computer Sec. Litig.*,
   No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...............................22

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..............................................................................................18

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)........................................................................................21

*In re M.L. Stern Overtime Litig.*,
   Case No. 07-CV-0118-BTM (JMA), 2009 WL 995864 (S.D. Cal. April 13, 2009).............15

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) ..........................................................................................21

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
   148 F.3d 283 (3d Cir. 1998)................................................................................................27

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007 ...............................................................................20

*In re Warner Comm. Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)..................................22

*Kui Zhu, et al., v. Taronis Technologies Incorporated, et al.*,
   No. cv-19-04529, 2020 WL 6868906 (D. Ariz. Nov. 23, 2020) ...........................................15

*Lembeck v. Arvest Central Mortg. Co.*,
   Case No. 3:20-cv-03277-VC, ECF No. 80 (N.D. Cal. Aug. 26, 2021) ..................................20

*M.L. Stern Overtime Litig.*,
   2009 WL 995864 ...............................................................................................................15

*McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*,
   No. 2:15-cv-01831-MHH, ECF No. 71 at 7 (N.D. Ala. Aug. 1, 2019) .........................1, 9, 10

*Nevarez v. Forty Niners Football Co., LLC*,
   326 F.R.D. 562 (N.D. Cal. 2018)........................................................................................24

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)................................................................................................20

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015)........................................................................................21

-iii-

*Phillips v. Caliber Home Loans, Inc.*,
    Case No. 19-cv-2711, 2021 WL 3030648 (D. Minn. July 19, 2021) ...................................... 25

*Rael v. Children's Place, Inc.*,
    No. 3:16-cv-00370, 2020 WL 434482 (S.D. Cal. Jan. 28, 2020) ........................................ 16

*Sanders v. LoanCare, LLC*,
    Case No. 2:18-cv-9376-SJO, 2020 WL 8365241 (RAOx) (C.D. Cal. Dec. 4, 2020) ............ 20

*Silveira v. M&T Bank*,
    No. 2:19-cv-06958-ODW(KSx), 2021 WL 2403157 (C.D. Cal. May 6, 2021) .............. 25, 27

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).................................................................. 22

*Torchia v. W.W. Grainger, Inc.*,
    304 F.R.D. 256 (E.D. Cal. 2014) ...................................................................... 18

*Uschold v. NSMG Shared Services, LLC*,
    333 F.R.D. 157 (N.D. Cal. 2019).................................................................... 15

*Vedachalam v. Tata Consultancy Servs., Ltd*,
    No. C 06-0963 CW, 2013 WL 3941319 (N.D. Cal. July 18, 2013) ...................................... 18

*Villegas v. J.P. Morgan Chase & Co.*,
    No. cv 09-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................ 17

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ........................ 21, 22

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)................................................................................ 16

**Statutes**
15 U.S.C. § 1692.................................................................................. 3, 25
Cal. Bus. & Prof. Code § 17200 .................................................................... 3
Cal. Civ. Code § 1788 ............................................................................ 3

**Rules**
Fed. R. Civ. P. 23 ............................................................................passim

**Other Authorities**
A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002) ........................ 15
Manual for Complex Litigation Fourth § 21.632 (2004).......................................... 15

1    Plaintiff Lawrence Torliatt ("Plaintiff" or "Torliatt"), by and through undersigned counsel

2    and pursuant to the Settlement Agreement and Release, dated June 24, 2022, filed herewith (the

3    "Settlement Agreement"), and the exhibits thereto, moves this Court for preliminary approval of

4    the proposed settlement (the "Settlement") of this action (the "Action"). More specifically,

5    Plaintiff respectfully requests this Court enter an order, in substantial form to the proposed order

6    attached as Exhibit C to the Settlement Agreement, (i) conditionally certifying the Settlement

7    Class and conditionally decertifying the previously certified litigation Class; (ii) preliminarily

8    approving the proposed Settlement as fair, reasonable, and adequate; (iii) approving the form and

9    manner of notice and directing that notice of the proposed Settlement be given to members of the

10   Settlement Class; and (iv) scheduling a hearing before the Court to determine whether the

11   Settlement should be finally approved.

12   **I.    INTRODUCTION.**

13   Plaintiff, on behalf of himself and the members of the Settlement Class,[1] and Defendant

14   PHH Mortgage Corporation ("PHH"), individually and as successor by merger to defendant

15   Ocwen Loan Servicing, LLC ("Ocwen"), (together with PHH the "PHH Defendants," and

16   collectively with Plaintiff, the "Parties") have reached a proposed Settlement in this Action. The

17   Settlement was reached only after intensive litigation, discovery, and arm's length negotiations,

18   including four mediation sessions over the course of two and a half years. The Settlement

19   provides significant and material benefits to the Settlement Class, including a cash settlement

20   fund of $7,000,000 and important injunctive relief. Moreover, the proposed Notice Program is

---

[1] The Settlement Class as defined in Section 1.1.34 of the Settlement Agreement is "all borrowers on residential mortgage loans involving mortgaged property located in the State of California who, between July 26, 2015 and June 24, 2022 (the last day of the Class Period), paid a Convenience Fee to Ocwen and/or, between July 30, 2015 and June 24, 2022, paid a Convenience Fee to PHH to make a due and owing monthly payment over the telephone, by IVR, or online. Excluded from the Class are (a) all employees of the PHH Defendants, (b) all members of the Settlement Class in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH, ECF No. 71 at 7 (N.D. Ala. Aug. 1, 2019), and (c) the federal district court and magistrate judges assigned to the Actions, along with persons within the third degree of relationship to them."

designed to provide individualized notice to each Settlement Class Member identified as borrowers on a Class Loan as reflected in the PHH Defendants' records. Class Notice will notify each Settlement Class Member of the terms of the Settlement and their options thereunder. There is no claims process; instead, each Settlement Class Member who does not opt out will automatically receive a payment on a pro rata basis, based upon the amount of Convenience Fees paid by the Settlement Class Member and retained by the PHH Defendants on a Class Loan on due and owing payments made during the Class Period. Any residual funds remaining in the Settlement Fund three hundred (300) days after the Final Settlement Date will be disbursed to Homes For Our Troops, "a privately funded 501(c)(3) nonprofit organization that builds and donates specially adapted custom homes nationwide for severely injured post–9/11 Veterans, to enable them to rebuild their lives,"[2] as a *cy pres* award. No funds from the Settlement will revert to the PHH Defendants. Class Counsel believe that this is an excellent result for the Settlement Class.

Moreover, Class Counsel will request attorneys' fees and expenses in an aggregate amount not to exceed thirty three percent (33%) of the Settlement Fund, which is in line with Ninth Circuit precedent for the percentage-of-fund method, as Class Counsel will demonstrate in its Motion for Final Approval and Motion for Attorneys' Fees and Costs. *See* Joint Declaration of Lee Lowther and James Kauffman ("Joint Declaration") at ¶ 20. Also, consistent with Ninth Circuit precedent, Plaintiff will request a Service Award of $10,000 in recognition of Plaintiff's service as the Class Representative. The PHH Defendants have retained the ability to object to any attorneys' fee and expense award or service award that Class Counsel and Plaintiff seek.

Accordingly, Plaintiff respectfully submits that the Court should preliminarily approve the Settlement as fair, adequate, and reasonable, conditionally decertify the existing litigation Class and certify the proposed Settlement Class, provide for notice to the Settlement Class, and schedule a hearing before the Court to determine whether the Settlement should be finally

---

[2] https://www.hfotusa.org/mission/ (last visited May 19, 2022).

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

approved. Additionally, pursuant to the Settlement Agreement, the Court should order that the classes certified on November 8, 2021, be conditionally decertified. Should the Settlement not receive final approval, the order granting class certification will be reinstated *nunc pro tunc*.

## II.    SUMMARY OF THE PROCEEDINGS.

On July 26, 2019, Plaintiff, on behalf of himself and all others similarly situated, filed a putative class action styled *Torliatt v. Ocwen Loan Servicing, LLC*, No. 3:19-cv-04303-WHO (N.D. Cal.) (the "Ocwen Action"). On July 30, 2019, Plaintiff, on behalf of himself and all others similarly situated, filed a putative class action styled *Torliatt v. PHH Mortgage Corp.*, Case No. 3:19-cv-04356-WHO (N.D. Cal.) (the "PHH Action"). In the initial complaints in each action, Plaintiff asserted various claims against PHH and Ocwen based on their practice of charging fees, ranging from $7.50 to $19.50, to borrowers when they paid their mortgages by phone or online ("Convenience Fees").[3]

The Ocwen and PHH Actions were consolidated under Case Number 3:19-cv-04303 (the "Action") (Doc. 14). On October 16, 2019, the Parties moved to stay this Action while they attempted early mediation to resolve this case (Doc. 28). Following a full-day mediation, the Parties' continued their attempts, through the mediator, to reach a resolution, (Doc. 30), but their efforts proved unsuccessful and they moved to lift the stay, (Doc. 32).

On February 14, 2020, Plaintiff filed an Amended Consolidated Class Action Complaint (the "Amended Complaint") against the PHH Defendants (Doc. 34). The Amended Complaint asserts four claims: (1) violation of the federal Fair Debt Collection Practices Act ("FDCPA"), (2) violation of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq*., (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., and (4) breach of contract. More specifically, the Amended Complaint alleges that Defendants violated the FDCPA, the Rosenthal Act and the UCL, as well

---

[3] For most of the period at issue in this Action, Ocwen and PHH used Speedpay, Inc.'s "Speedpay™" service to facilitate these kinds of online and telephonic payment methods, so the Convenience Fees charged by Ocwen and PHH were often referred to as "Speedpay" fees.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

as breached their contracts, by collecting Convenience Fees from borrowers when they paid their mortgage payments online or over the phone.

Following consolidation, the PHH Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint on March 6, 2020 (Doc. 36). In their Motion to Dismiss, the PHH Defendants argued dismissal was warranted because (i) the Convenience Fees were fully disclosed and consented to in advance, (ii) Plaintiff failed to allege that Ocwen or PHH was a debt collector under the either the Rosenthal Act of the FDCPA, and (iii) Plaintiff failed to allege that his Deed of Trust was breached.

On March 11, 2020, the PHH Defendants filed a Motion to Temporarily Stay Discovery and Case Management Deadlines Until After Resolution of Pending Motion to Dismiss and Incorporated Memorandum of law (Doc. 37), which the Court denied on March 13, 2020 (Doc. 39).

On March 27, 2020, Plaintiff filed his Opposition to PHH Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 43). And, on April 8, 2020, the PHH Defendants filed a reply brief in further support of their Motion to Dismiss (Doc. 48).

On April 17, 2020, the Court entered an order granting, in part, and denying, in part, the Motion to Dismiss (Doc. 49). More specifically, the Court granted the Motion to Dismiss as to Plaintiff's FDCPA and breach of contract claims, but denied the Motion to Dismiss as to Plaintiff's Rosenthal Act and UCL claims. The Court further ordered that Plaintiff "shall file an amended complaint by May 1, 2020." *Id*. at p. 10.

In accord with the Court's April 17th Order, Plaintiff filed a Second Amended Consolidated Class Action Complaint ("Second Amended Complaint") on May 1, 2020 (Doc. 50). On May 15, 2020, the PHH Defendants filed (i) a Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 54), and (ii) a Motion for Leave to File a Motion for Reconsideration and, in the Alternative, for Conditional Certification of an Interlocutory Appeal, with Accompanying Memorandum of Points and Authorities (Doc. 55).

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

On May 29, 2020, Plaintiff filed (i) a Notice of Voluntary Dismissal of Counts II and IV of the Second Amended Complaint (Doc. 56), (ii) an Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 57); and (iii) a Response to Defendants' Motion for Leave to File a Motion for Reconsideration and, in the Alternative, for Conditional Certification of an Interlocutory Appeal (Doc. 58).

On June 5, 2020, the PHH Defendants filed (i) a Reply in Further Support of their Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 59), and (ii) a Reply in Further Support of their Motion for Leave to File a Motion for Reconsideration and, in the Alternative, for Conditional Certification of an Interlocutory Appeal (Doc. 60).

On June 22, 2020, the Court entered an order denying the PHH Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and denying Defendants' Motion for Leave to File a Motion for Reconsideration and, in the Alternative, for Conditional Certification of an Interlocutory Appeal (Doc. 62). On July 6, 2020, PHH Defendants filed their Answer to the Second Amended Complaint (Doc. 63).

On March 25, 2020, Vincent Morris filed suit against PHH in the United States District Court for the Southern District of Florida, asserting claims under Florida law challenging PHH's collection of Convenience fees (Doc. 67). On May 12, 2020, Class Counsel participated in a mediation with PHH Defendants' Counsel and the attorneys for Mr. Morris. Following that mediation, it became clear the *Morris* counsel were going to agree to the PHH Defendants' demand to amend the notes and deeds of trust of all class members to expressly authorize the collection of Convenience Fees. Class Counsel refused to agree to this injunctive relief against members of the, at that time, putative classes. Instead, on July 27, 2020, Class Counsel moved to intervene in the *Morris* action to oppose preliminary approval of the settlement, which was broadened to include borrowers in the state of California.

Accordingly, on August 21, 2020, Plaintiff filed a Motion for Order Under the All Writs Act and Incorporated Memorandum of Law (Doc. 66). On that same date, Plaintiff filed a Motion

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

to Appoint Interim Class Counsel under Rule 23(g) and Incorporated Memorandum of Law (Doc. 68).

On August 28, 2020, Defendants filed a Motion to Stay Class Related Proceedings and Incorporated Memorandum of Law (Doc. 72), and a Motion to Consolidate Hearing on Motions and Adjust Briefing Schedule Accordingly (Doc. 73).

On September 4, 2020, Defendants filed an Opposition to Plaintiff's Motion for Order Under All Writs Act (Doc. 75), and an Opposition to Plaintiff's Motion to Appoint Interim Class Counsel (Doc. 76).

On September 8, 2020, Plaintiff filed a Reply in Further Support of his Motion for Order Under All Writs Act (Doc. 78), and a Response to Defendant PHH's Motion to Consolidate Hearing (Doc. 80).

On September 9, 2020, the Court granted Defendant PHH's Motion to Consolidate Hearing (Doc. 85).

On September 11, 2020, Plaintiff filed an Opposition to Defendants' Motion to Stay Class Related Proceedings (Doc. 87), and a Reply in Further Support of Motion to Appoint Interim Class Counsel Under Rule 23(g) (Doc. 89).

On September 19, 2020, Defendants filed a Reply in Further Support of their Motion to Stay Class Related Proceedings (Doc. 90)

On October 2, 2020, following oral argument, the Court entered an order granting Plaintiff's Motion to Appoint Interim Class Counsel Under Rule 23(g), denying Plaintiff's Motion for Order Under the All Writs Act, and denying Defendants' Motion to Stay Class Related Proceedings (Doc. 93).

On June 7, 2021, Defendant PHH filed a Motion to Stay, seeking to stay all proceedings pending the United States Court of Appeals for the Ninth Circuit's resolution of the appeal in *Amy Thomas-Lawson et al. v. Carrington Mortgage Services, LLC*, Case No. 21-55459 (9th Cir. 2021) (Doc. 111), which Plaintiff timely opposed (Doc. 113).

On June 30, 2021, Plaintiff filed a Motion for Class Certification and Incorporated Memorandum of Law (both redated and unredacted versions) (Docs. 116 and 116a).

On July 14, 2021, the Court entered an order denying Defendants' Motion to Stay (Doc. 118).

On August 2, 2021, Defendants filed an Opposition to Plaintiff's Motion for Class Certification (both redacted and unredacted versions) (Docs. 123 and 123a), and a Motion to Exclude Expert Patricia Forcier (Doc. 124).

On August 18, 2021, Plaintiff filed a Motion for Partial Summary Judgment and Incorporated Memorandum of Law (both redacted and unredacted versions) (Doc. 130 and 130a). On that same date, PHH filed a Motion for Summary Judgment on All Claims and Incorporated Memorandum of Law (Doc. 131).

On August 31, 2021, Plaintiff filed an Opposition to Motion to Exclude Expert Patricia Forcier (Doc. 134), a Reply in Further Support of Motion for Class Certification (both redacted and unredacted versions) (Docs. 136 and 136a).

On September 1, 2021, Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment on All Claims (Doc. 137), and Defendants filed an Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 139). On September 15, 2021, the Parties filed their respective reply briefs (Docs. 143-145).

On November 8, 2021, following oral argument, this Court entered an order granting Plaintiff's Motion for Class Certification and denying Defendant's Motion to Exclude Expert Patricia Forcier (Doc. 152).

In addition to engaging in extensive motions practice, the Parties also engaged in extensive discovery. In particular, the PHH Defendants produced 925 documents (totaling 4,281 pages and comprising spreadsheets with data on hundreds of thousands of transactions) in response to 68 requests for production served by Plaintiff; responded to 20 total interrogatories; and made three separate corporate representatives available for depositions in response to 64 combined 30(b)(6) deposition topics. In turn, Plaintiff produced 679 documents (totaling 3,875

-7-

pages) in response to the PHH Defendants' requests for production, and the PHH Defendants also took Plaintiff's deposition. The Parties also engaged in expert discovery. Plaintiff offered the opinions of Ms. Patricia Forcier concerning her opinions on the uniformity of loan documents, while the PHH Defendants offered the opinions of Dr. Andrew Carron concerning the absence and individualized nature of putative class member injuries. Both experts were deposed.

On November 17, 2021, the Parties participated in a Court-ordered mediation session before Chief Magistrate Judge Joseph C. Spero, but were unable to resolve the case that day considering that the PHH Defendants' motion for preliminary approval of their nationwide settlement was still pending in the *Morris* action.

On November 22, 2021, the PHH Defendants filed a Petition for Permission to Appeal Class Certification Under Rule 23(f) with the Ninth Circuit Court of Appeals, which was denied on March 1, 2022.

On April 27, 2022, the Parties participated in a second Court-ordered mediation session, their fourth mediation session over the course of the litigation, before Chief Magistrate Judge Spero. By this point, the Parties recognized that both regulators and courts have reached different conclusions on the merits of the claims presented, and that compromise was preferable to continued litigation for all concerned. On the one hand, many federal district courts have held that Convenience Fees do not violate the FDCPA or state analogs, such as the Rosenthal Act. Additionally, the PHH Defendants interpret guidance from the Federal Trade Commission ("FTC") as opining that Convenience Fees do not violate the FDCPA because any required authorization and consent could be expressed in general terms in the loan documents or granted orally in a side agreement entered into at the time of the payment transaction. On the other hand, many other federal district courts have held that Convenience Fees do violate the FDCPA or state analogs if neither the underlying loan documents nor state statutes expressly authorize Convenience Fees. And in 2017, the Consumer Financial Protection Bureau ("CFPB") issued guidance stating its position that that the assessment of Convenience Fees could violate the FDCPA in certain circumstances. One federal appellate court has weighed in on the dispute, with

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

the Fourth Circuit recently concluding that the convenience fees of a different servicer violated

Maryland's analog to the FDCPA and Rosenthal Act.

As a result of the settlement conference and further negotiations, and based upon their

own respective independent investigations and evaluations of the facts and law relating to all of

the matters alleged in the pleadings, the Parties entered into a "Proposed Settlement Term Sheet"

on May 9, 2022, subject to approval by upper management or the board of the PHH Defendants.

After obtaining such approval, the Parties filed a Joint Notice Concerning Settlement on May 16,

2022, notifying the Court that the Parties had reached a settlement and expected to file a motion

for preliminary approval on or about June 25, 2022 (Doc. 162).

Thereafter, the Parties worked cooperatively to draft a comprehensive Settlement

Agreement and exhibits thereto, which are being filed herewith.

## III. SUMMARY OF THE PROPOSED SETTLEMENT.

### A. Settlement Benefits.

Under the proposed Settlement, the PHH Defendants shall establish a cash settlement

fund of $7,000,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members. (Ex.

3 to Joint Declaration.) In accord with paragraph 1.1.34 of the Settlement Agreement, the

Settlement Class shall include:

> All borrowers on residential mortgage loans involving mortgaged property
> located in the State of California who, between July 26, 2015 and June 24, 2022
> (the last day of the Class Period), paid a Convenience Fee to Ocwen and/or,
> between July 30, 2015 and June 24, 2022, paid a Convenience Fee to PHH to
> make a due and owing monthly payment over the telephone, by IVR, or online. [4]

---

[4] The proposed Settlement Class is substantially similar to the litigation Class certified by this
Court in its November 8, 2021 order (Doc. 152). In its November 8th Order, this Court certified
the following Class:

> All persons in the United States (1) with a Security Instrument on a residential
> loan securing a property located in the State of California, (2) that is or was
> serviced by Ocwen or PHH, (3) who were charged one or more Pay-to-Pay fee,
> (4) whose Security Instrument did not expressly allow for the charging of a Pay-
> to-Pay fee at the time the Pay-to-Pay fee was charged, (5) whose mortgage debt
> was due and owing at the time the fee was charged, and (6) who were not class

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

Unless a Settlement Class Member submits a valid and timely Request for Exclusion, he or she will automatically receive a *pro rata* distribution from the Settlement Fund, less any court-approved attorneys' fees and costs, service award, and costs of notice and settlement administration (the "Net Settlement Amount"), upon Court approval. Each Class Loan remaining within the Settlement Class as of the Final Settlement Date will be entitled to receive an Individual Allocation, calculated based on the proportion of Convenience Fees paid to and retained (1) by Ocwen on that Class Loan between July 26, 2015 and June 24, 2022, inclusive, or (2) by PHH on that Class Loan between July 30, 2015 and June 24, 2022, inclusive, on due and owing loan payments, as compared to the total aggregate amount of all Convenience Fees paid to and retained by Ocwen and PHH on due and owing loan payments with respect to all Class Loans during the respective periods. A payment is considered "due and owing" if made on or after the date the payment was due. The purpose of this method of allocation is to ensure that the Settlement Fund is allocated equitably based on the relative amount of Convenience Fees charged to and paid on due and owing loan payments with respect to each Class Loan.  As a result, payments made on Class Loans with multiple borrowers shall be treated as joint payments for purposes of this calculation, such that each Class Loan will be entitled to only one Individual Allocation of the remaining balance of the Settlement Fund. Co-debtors, joint-borrowers, and

---

members in *McWhorter v. Ocwen Loan Servicing, LLC*, 2:15-CV-01831-MHH (N.D. Ala.).

*See* Doc. 152 at p. 23. As with the previously certified Class, the Settlement Class includes borrowers on residential loans where the mortgaged property is located in the State of California, and the borrowers paid a Convenience Fee to either Ocwen or PHH to make a due and owing payment over the telephone, by IVR, or online. The Settlement Class further provides for a Settlement Class Period of between July 26, 2015 and June 24, 2022. The Class Loans encompassed in the Settlement Class Period have been determined and verified through reference to the PHH Defendants' records. *See* Settlement Agreement at ¶ 11.7. Excluded from the definition of Class Loans are all loans where one or more of the borrowers are (a) employees of Defendants, (b) all members of the Settlement Class in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH, ECF No. 71 at 7 (N.D. Ala. Aug. 1, 2019), and (c) the federal district court and magistrate judges assigned to the Actions, along with persons within the third degree of relationship to them.

multiple obligators on a single Class Loan are not entitled to a separate Individual Allocation on the same Class Loan. *See* Settlement Agreement at ¶ 4.5.

Checks issued under the Settlement will be negotiable for 180 calendar days after the date of issuance, and Settlement Class Members' failure to deposit, negotiate, or otherwise cash such checks within that one hundred and eighty (180) day period shall constitute a release by those Settlement Class Members (and all other borrowers on their respective Class Loan) of any and all rights to monetary relief under the Settlement. Individual Allocation relief that remains undeliverable three hundred (300) days after the Final Settlement Date despite the Settlement Administrator's efforts to locate the Settlement Class Members shall be paid to Homes For Our Troops, described above. No portion of the Settlement Fund will revert to the PHH Defendants.

In addition to the monetary benefits, as a result of the Settlement, the PHH Defendants have agreed to stop charging Convenience Fees to borrowers whose loan is subject to the Rosenthal Act—*i.e.*, borrowers on residential mortgage loans involving mortgaged property in the State of California who are making a payment on or after the payment's due date—for a period of 2 years from the Final Settlement Date. *See* Settlement Agreement at ¶ 5.1.

In exchange for the consideration from the PHH Defendants, the Action will be dismissed with prejudice upon final approval of the Settlement, and Settlement Class Members will thereby release all claims against the PHH Defendants and the Released Parties, relating to the Convenience Fees charged by Ocwen to Settlement Class Members, during the period from July 26, 2015 through and including the date the settlement is submitted for preliminary approval, and by PHH to Settlement Class Members, during the period from July 30, 2015 through and including the date the settlement is submitted for preliminary approval, for making loan payments by telephone, IVR, the internet, and other payment methods. *See* Settlement Agreement ¶ 3.3.

**B. Settlement Administrator**

The Parties have selected KCC as the Settlement Administrator. KCC is a leading class action firm in the United States that will assist the Parties to implement the notice plan, calculate Individual Allocations and distribute Individual Allocations to Settlement Class Members paid

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

by check, and aid in fulfilling the related requirements set forth in the Agreement. *See* Settlement Agreement at ¶ 1.1.33. In deciding on KCC, the Parties solicited bids from five prominent settlement administrators. Each administrator submitted a bid based on an estimated class size of 139,491 Class Loans, with a notice plan utilizing individual notice to Settlement Class Members via mail and a Settlement Website, as more fully discussed below. The bid received from KCC's estimates administrative costs of $211,611, which equates to approximately 3% of the total Settlement Fund. All administrative costs will be paid from the Settlement Fund. *See* Settlement Agreement at ¶ 4.3.

### C. Notice.

As set forth in Section 7 of the Settlement Agreement, notice to Settlement Class Members shall be made by mailing, by first-class US mail, the Class Notice (substantially in the form attached as Exhibit A to the Settlement Agreement) to the Potential Settlement Class Members identified in the PHH Defendants' records on each Class Loan, addressed to the mailing address of record for that Class Loan as reflected in the PHH Defendants' records. As a result, one (1) Class Notice will be sent with respect to each Class Loan, addressed jointly to all Potential Settlement Class Members identified as borrowers with respect to that Class Loan in the PHH Defendants' records. Prior to mailing, the Settlement Administrator shall attempt to update the last known borrower mailing addresses for each Class Loan as reflected in the PHH Defendants' records through the National Change of Address system or similar databases. To the extent any Class Notice is returned with a forwarding address or if no forwarding address, to the extent the Administrator is reasonably able to locate a more current mailing address using skip tracing, the Administrator shall re-mail the Class Notice so long as the valid address is obtained by the Administrator at least seven (7) days or more prior to the Objection/Exclusion Deadline. *See* Settlement Agreement at ¶ 7.2.7. All costs and fees related to dissemination of the Class Notice and skip tracing will be considered administrative costs to be paid from the Settlement Fund. *Id*. at ¶ 7.3.

The Class Notice includes the following information: (1) a plain and concise description of the nature of the Action and the terms of the proposed Settlement, (2) a definition of the Settlement Class and an explanation that the Settlement Class has been provisionally certified for purposes of settlement only, (3) the right of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, (4) a summary of the proposed terms of the Release contemplated by the Settlement, (5) specifics on the date, time and place of the Final Fairness Hearing, and (6) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representative's Service Award.

### D. Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) a Service Award.

The Settlement Agreement provides that Class Counsel will file a motion with the Court requesting an award of attorneys' fees not to exceed 33% of the Settlement Fund, or $2,310,000, to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case, and for reimbursement of their costs litigating this Action. *Id.* at ¶ 10.1. The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees and costs. *Id.* at ¶ 10.7.

The Settlement Agreement further provides that Plaintiff will request a Service Award in an amount not to exceed $10,000. *Id.* at ¶ 10.4. This award will be paid out of the Settlement Fund and will compensate Plaintiff for his time and effort serving as the Class Representative. *Id.* at ¶¶ 10.4 and 10.5.

The PHH Defendants remain free to oppose any request for attorneys' fees, costs, or service awards.

## IV.    PROPOSED SCHEDULE OF EVENTS.

Consistent with the provisions of the Settlement Agreement, Plaintiff respectfully proposes the following schedule for the various Settlement events:

- Deadline for funding all Costs of Administration: within 3 business days of entry of the Preliminary Approval Order (*see* Settlement Agreement at ¶ 4.3);

- Deadline for disseminating Class Notice ( which is Ex. A to the Settlement Agreement) (the "Notice Deadline"): within 28 calendar days after entry of the Preliminary Approval Order (*see id.* at ¶ 7.2.2);

- Deadline for creating the Settlement Website: by the date of the first mailing of the Class Notice, *i.e.* 28 calendar days after entry of the Preliminary Approval Order (*see id.* at ¶ 7.2.8);

- Deadline for filing Class Counsel's application for award of attorneys' fees and expenses and a Service Award: no later than 14 calendar days before the Objection/Exclusion Deadline (*see id.* at ¶ 10.1);

- Deadline for submission of the requests for exclusion from the Class or objections to the Settlement, plan of allocation, the request for attorneys' fees and expenses (the "Response Deadline"): 35 days before the originally scheduled date of the Fairness Hearing (if the Fairness Hearing is continued, the deadline runs from the first scheduled Fairness Hearing) (*see id.* at ¶ 1.1.16);

- Final Fairness Hearing: at the Court's convenience, but no earlier than 135 days after the date of entry of the Preliminary Approval Order (*see id.* at ¶ 1.1.11); and

- Funding of the remaining balance of the Settlement Fund: within 10 business days after the Final Settlement Date (*see id.* at ¶¶ 4.4 and 4.5).

## V.    APPLICABLE LEGAL STANDARDS.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial review of a proposed class action settlement is well established:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. . . If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b) . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing.

-14-

*In re M.L. Stern Overtime Litig.*, Case No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009) (quoting Manual for Complex Litigation Fourth § 21.632 (2004)); *Kui Zhu, et al., v. Taronis Technologies Incorporated, et al.*, No. cv-19-04529, 2020 WL 6868906, at *4 (D. Ariz. Nov. 23, 2020) (when considering to grant preliminary approval of a settlement, a court should consider "whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval"). Importantly, "[b]ecause class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *M.L. Stern Overtime Litig.*, 2009 WL 995864, at *3 (quoting A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002)); *Uschold v. NSMG Shared Services, LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (stating "a full fairness analysis is unnecessary at th[e] [preliminary approval] stage," and concluding "[p]reliminary approval is thus appropriate if the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotations omitted); *see also* Rule 23(e)(1)(B) (providing notice may be given upon a showing that the court will likely be able to approve the proposed settlement under Rule 23(e)(2) and certify the class for settlement purposes).

Applying the standards above, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects. *See Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2020 WL 6710086, at *1 (N.D. Cal. Nov. 15, 2020) (granting preliminary approval upon finding that the proposed settlement "appear[ed] non-collusive and within the realm of approvable"); *Deaver v. Compass Bank, et al.*, No. 13-cv-00222, 2015 WL 4999953, at *6 (N.D.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

1  Cal. Aug. 21, 2015) ("[P]reliminary approval of a settlement and notice to the class is appropriate

2  if [1] the proposed settlement appears to be the product of serious, informed, noncollusive

3  negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment

4  to class representatives or segments of the class, [4] and falls within the range of possible

5  approval.") (internal quotations and citation omitted).

6  **VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.**

7          As a matter of public policy, settlement is a strongly favored mechanism for resolving

8  disputed claims. *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). "In the class action

9  context in particular, there is an overriding public interest in favor of settlement." *Armstrong v.*

10 *Bd. Of Sch. Dir. Of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980) (citation and internal

11 quotation marks omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th

12 Cir. 1998); *see also Rael v. Children's Place, Inc.*, No. 3:16-cv-00370, 2020 WL 434482, at *10

13 (S.D. Cal. Jan. 28, 2020) (noting the "'strong judicial policy that favors settlements, particularly

14 where complex class action litigation is concerned'") (citing *Class Plaintiffs v. City of Seattle*,

15 955 F.2d 1268, 1276 (9th Cir. 1992)). Rule 23(e)(1)(B) also provides that the notice should be

16 given, if the Court concludes that it will likely be able to approve the settlement under Rule

17 23(e)(2), and certify the class for settlement purposes.

18         Turning to the specifics of this Action, preliminary approval of the Settlement should be

19 granted because the Settlement was the result of arm's length negotiations between the Parties,

20 has no obvious deficiencies, treats Settlement Class Members equally, and is within the range of

21 possible approval.

22         **A.  The Settlement Satisfies the Criteria for Preliminary Approval.**

23              1.    <u>The Settlement Was the Result of Arm's Length Negotiations Between</u>
                     <u>the Parties, Has No Obvious Deficiencies, and Treats Settlement Class</u>
24                   <u>Members Equally.</u>

25         Courts recognize that arm's-length negotiations conducted by competent counsel are

26 *prima facie* evidence of fair settlements. The Court's role is to ensure "the agreement is not the

27 product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

28
                                                        -16-

settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotations omitted). Courts will approve class action settlements entered into after good-faith, arm's-length negotiations. *See Facebook*, 2020 WL 6710086, at *1; *Deaver*, 2015 WL 4999953, at *6. Moreover, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver*, 2015 WL 4999953, at *4 (quoting *Villegas v. J.P. Morgan Chase & Co*., No. cv 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)).

Here, the Settlement was reached only after an in-depth factual investigation, extensive motions practice, fulsome discovery, two full-day mediation sessions with a private mediator, and two additional mediation sessions before Magistrate Judge Spero, who succeeded in shepherding the Parties to a resolution. Thus, Class Counsel had a wealth of information at their disposal before entering into settlement negotiations. Consequently, Class Counsel were able to adequately assess the strengths and weaknesses of Plaintiff's case and balance the benefits of settlement against the risks of further litigation.

Equally important, counsel for the PHH Defendants vigorously defended their clients' position and demonstrated their commitment to litigate this Action to its conclusion. Indeed, their Motion to Dismiss led to the dismissal of two of the four counts originally brought by Plaintiff. Hence, the proposed Settlement represents concessions by both parties after hard-fought litigation and negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues.

Additionally, there are no obvious deficiencies in the Settlement Agreement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *Deaver*, 2015 WL 4999953, at *4. Settlement Class Members who do not exclude themselves will automatically receive a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees and costs, service award, and costs of settlement notice and administration.

The anticipated requests for attorneys' fees and costs and a service award are reasonable

and directly in line with prevailing standards in the Ninth Circuit. *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 272 and 278 (E.D. Cal. 2014) ("In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 30% of the total settlement value, with 25% considered the benchmark," further providing that recovery of reasonable expenses is "routine[ ]."); *Arredondo v. Sw. & Pac. Specialty Fin., Inc.*, No. 118CV01737DADSKO, 2022 WL 2052681, at *14 (E.D. Cal. June 7, 2022) (finding an upward departure from the 25% benchmark was appropriate and awarding one-third of the gross settlement amount in fees); *Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (finding "[i]n light of the many cases in this circuit that have granted fee awards of 30% or more, the requested fee [of 30%] is well within the usual range of percentages awarded in similar cases," and further approving $268,176 in litigation expenses); *Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) (approving $10,000 incentive award). Moreover, the reasonableness of the aggregate fee and expense award contemplated in this Action is underscored by Class Counsel's lodestar and litigation expenses. To date, Class Counsel has a total lodestar of $1,629,369.00. Joint Declaration at ¶ 22. Class Counsel's litigation expenses, which includes costs for mediation, taking and defending depositions, filing and pro hac vice fees, and expert fees, are $78,938.07 to date. *Id.* at ¶ 23. Backing out the litigation expenses from the aggregate fee and expense award, yields a modest multiplier of 1.37 on the fee request. *Id*. at ¶ 24; *see also Arredondo*, 2022 WL 2052681, at *14 (stating "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation").

Furthermore, the Settlement provides that any residual funds remaining in the Settlement Fund three hundred (300) days after the Final Settlement Date will be disbursed to Homes For Our Troops, as a *cy pres* award. Thus, there is no reverter.

Additionally, the scope of the release is not overly broad as Settlement Class Members will release only those claims related to the Convenience Fees charged by Ocwen to Settlement Class Members, during the period from July 26, 2015 through and including the date the

settlement is submitted for preliminary approval, and by PHH to Settlement Class Members, during the period from July 30, 2015 through and including the date the settlement is submitted for preliminary approval, for making loan payments by telephone, IVR, the internet, and other payment methods. *See* Settlement Agreement ¶ 3.3.

Lastly, there is no unfair or preferential treatment of any Settlement Class Member. *See Hendricks v. Starkist Co*., No. 13-CV-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015). Here, payments to Settlement Class Members will be made on a *pro rata* basis, based on the amount of Convenience Fees paid by Settlement Class Members and retained by Ocwen and/or PHH on due and owing payments during the Class Period as a percentage of all such Convenience Fees paid by all Settlement Class Members. Thus, each Settlement Class Member is given fair and equal treatment.

In sum, the Settlement was achieved through arm's-length negotiations conducted by competent counsel, contains no obvious deficiencies, and treats Settlement Class Members equally. Accordingly, there are no grounds to doubt the Settlement's fairness.

> 2. <u>The Settlement Falls Within the Range of a Reasonable Settlement While Guaranteeing Settlement Class Members Tangible and Immediate Benefits Without the Risks of Further Litigation.</u>

The value of the proposed Settlement falls well within the range of a reasonable settlement. The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]"). To determine if a settlement falls within the range of possible approval, a court considers "plaintiff's expected recovery balanced against the value of the settlement offer, in light of the risks of further litigation." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the Parties have determined, based upon Defendant's records, that Defendants collected and retained a total of approximately $16,880,000.00 in Convenience Fees that Plaintiff

-19-

alleges were improper. *See* Joint Declaration at ¶ 9. The proposed Settlement creates a Settlement Fund of $7,000,000.00, or roughly 42% of that sum. *See* Settlement Agreement at ¶ 4.2 Moreover, Class Counsel has secured valuable injunctive relief for the Settlement Class, which has resulted in the PHH Defendants cessation of the Convenience Fees to borrowers whose loan is subject to the Rosenthal Act—*i.e.*, borrowers on residential mortgage loans involving mortgaged property in the State of California who are making a payment on or after the payment's due date—for a period of 2 years from the Final Settlement Date. *Id.* at ¶ 5.1. Based on the aggregate amount of Convenience Fees collected during the Settlement Class Period, it is estimated that the PHH Defendants collect approximately $2,440,000 in Convenience Fees per annum. Accordingly, the value of the injunctive relief is estimated to equal approximately $4,880,000. Joint Declaration at ¶ 10. Class Counsel believe this is an excellent result for Settlement Class Members that compares favorably with other settlements in convenience fee cases. *See Phillips v. Caliber Home Loans, Inc.*, Case No. 19-cv-02711-WMW-LIB, ECF No. 111 (D. Minn. Mar. 21, 2022); *Reddick v. Freedom Mortg. Corp.*, Case No. 3:19-cv-02193-N, ECF No. 118 (N.D. Tex. Dec. 17, 2021). A summary of the Settlements in *Sanders* and *Lembeck* follows:

| Case Name | Settlement Fund | Class Size | Method of Notice | Cy Pres Recipient | Fee and Expense Award |
|---|---|---|---|---|---|
| *Phillips* | $5,000,000 (which is equivalent to 29.38% of the fees alleged to be wrongfully collected) | 456,663 | Mail and Email Notice; Settlement Website | Habitat for Humanity | Fee Award of 33% of the Settlement Fund, plus litigation expenses of $10,410.66 |
| *Reddick* | $2,250,000 (which is equivalent to 35% of the fees alleged to be wrongfully collected) | Approximately 48,000 | Postcard and Email Notice; Settlement Website | Habitat for Humanity | Fee Award of 33%, plus litigation expenses of $19,982.00 |

While the maximum value of Plaintiff's claims is larger than the Settlement amount, when the maximum value of Plaintiff's and the Class's claims are discounted by the identifiable risks, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (same); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation. It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no guarantee of ultimate success").

Here, the risks of continued litigation are substantial. The PHH Defendants have vigorously denied Plaintiff's allegations of wrongdoing. *See Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)). Defendants filed a motion to dismiss early in this case, leading to the dismissal of two of the four counts originally brought by Plaintiff. The PHH Defendants also vigorously opposed class certification and moved for summary judgment. If this case were to continue, Plaintiff anticipates that the PHH Defendants would likely pursue decertification of the Class and an appeal on class certification and merits issues. Thus, continued litigation of the action would have been lengthy and expensive, and the possibility of Plaintiff litigating this case on a class basis through judgment is uncertain.

Moreover, even if Plaintiff was to prevail on liability through continued litigation, he

-21-

faces significant risks as an appeal by the PHH Defendants on liability grounds would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. at 743-44. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id.*

In sum, the proposed Settlement provides Settlement Class Members immediate benefits without the risks and costs of further litigation. In contrast to these tangible, immediate benefits, the outcome of continued litigation and a trial against the PHH Defendants is uncertain. Accordingly, the benefits conferred by the Settlement are within the range of reasonableness. Thus, preliminary approval of the proposed Settlement should be granted.

### B.  The Proposed Notice Program Is Adequate.

The Ninth Circuit has recognized that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations omitted). Here, the Class Notice meets all the requirements of Rule 23(c)(2)(B) by advising Settlement Class Members of the nature of the claims involved in the case; the essential terms of the Settlement, including the definition of the Settlement Class and the method of distribution of settlement proceeds; the rights of Settlement Class Members to participate in the Settlement, to request exclusion from the Settlement Class or to object to the Settlement, and specifics on the dates for exercising these rights; the requirements for opting out, for objecting, and for making an appearance at the Final Fairness Hearing; and the time and location of the Final Fairness Hearing. Thus, the Class Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

The Class Notice also contains information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and costs, and service awards for the Class Representative.

Moreover, the proposed Settlement requires Plaintiff to notify Settlement Class Members of the proposed Settlement by mailing, by first-class US mail, the Class Notice. Thus, Settlement Class Members have been identified from the PHH Defendants' internal records and shall receive individual notice.

In addition, a Settlement Website will be established which will provide access to the Class Notice, as well as other key documents related to the Settlement, including the Settlement Agreement, the Court's Preliminary Approval Order, and Class Counsel's application for attorneys' fees and costs.

Accordingly, the form and manner of Notice proposed here fulfills all of the requirements of Rule 23(e)(1) and due process.

## VII. CONDITIONAL DECERTIFICATION OF THE LITIGATION CLASS AND CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

In order to proceed with the preliminary approval process, it is necessary for this Court to conditionally decertify the litigation Class previously certified (Doc. 152), and preliminarily certify a class for purposes of the Settlement. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: (1) . . ., or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

-23-

As set forth below, all of the requirements of Rule 23(a) and (b)(3) are met in this case, justifying preliminary certification of the proposed Settlement Class for settlement purposes.

### A. The Class Is Sufficiently Numerous.

"Numerosity is usually satisfied where the class consists of 40 or more members." *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 576 (N.D. Cal. 2018). Here, based on a review of the PHH Defendants' internal records, the Parties have ascertained that the Settlement Class consists of 139,491 Class Loans, with the borrowers on the Class Loans dispersed throughout the State of California. As such, the Settlement Class clearly satisfies the numerosity requirement.

### B. There Are Common Issues of Law or Fact Common to the Settlement Class.

The commonality requirement of Rule 23(a)(2) is satisfied in this Action because there are many questions of law and fact common to the Settlement Class that focus on the PHH Defendants' common practice of charging and collecting Convenience Fees. *See Silveira v. M&T Bank*, No. 2:19-cv-06958-ODW(KSx), 2021 WL 2403157, at *3 (C.D. Cal. May 6, 2021) (finding allegations that class members were charged "Pay-to-Pay Fees for mortgage payments made over the phone" satisfied commonality and granting preliminary approval of the proposed settlement); *Phillips v. Caliber Home Loans, Inc.*, Case No. 19-cv-2711, 2021 WL 3030648, at *7 (D. Minn. July 19, 2021) (stating "Plaintiffs' claims here depend on the common contentions that Pay-to-Pay Fees are neither authorized by Class Members' mortgages not permitted by law" and finding commonality "including both questions of law and questions of fact"). The common issues of law and fact in this Action include, among other issues: (1) whether the PHH Defendants' collection of Convenience Fees violated the Rosenthal Act; and (2) whether the Defendants' collection of Convenience Fees violated the UCL.

### C. The Claims of Plaintiff Are Typical of the Claims of the Members of the Settlement Class.

"[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the

-24-

specific facts from which it arose or the relief sought." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, Plaintiff's claims are based on the PHH Defendants' systematic collection of Convenience Fees. Plaintiff's and the Settlement Class Members' claims are based on the same legal theories. Because Plaintiff's claims arise from the same course of conduct that affected all Settlement Class members and are based on the same legal theories as the claims of all Settlement Class members, typicality is satisfied.

### D. Plaintiff and Class Counsel Have Fairly and Adequately Represented the Interests of the Settlement Class, and Will Continue to Do So.

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiff has retained counsel with significant expertise in complex class action litigation. More specifically, Class Counsel are nationally recognized law firms within the field of complex class litigation and have experience in matters involving consumer claims related to convenience fees collected by mortgage servicers. *See* Joint Declaration at ¶¶ 3-6 and Exhibits A and B thereto. In addition, Class Counsel are well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members. *Id*. at ¶ 7. Thus, Class Counsel are unquestionably qualified to undertake this litigation.

Moreover, Plaintiff and the Settlement Class desire the same outcome of this litigation, namely to cease the PHH Defendants' collection of improper Convenience Fees and retrieve the largest possible monetary recovery from the PHH Defendants. Thus, Plaintiff's claims coincide identically with the claims of the Settlement Class. Additionally, because of this, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class. Further, there is no conflict or any antagonism between Plaintiff and the Settlement Class. Consequently, Plaintiff satisfies the adequacy requirement.

### E. The Common Questions of Law and Fact in this Action Predominate Over Any Individual Issues and a Class Action Is the Superior and Most Efficient Means to Adjudicate the Claims.

In accordance with Rule 23(b), certification is appropriate when common questions of law or fact predominate over individual questions and a class action is superior to other available means of adjudication. *See* Fed. R. Civ. P. 23(b)(3). These requirements are satisfied in this case.

#### 1.    Common Questions of Law and Fact Predominate.

In analyzing the predominance factor, the Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 622 (1997). In this regard, the predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v Chrysler Corp.*, 150 F.3d at 1022 (citations and quotations omitted); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 314-15 (3d Cir. 1998) (affirming the certification of a nationwide consumer fraud class).

As the Court found in its order granting Plaintiff's Motion for Class Certification, (Doc. 152), common questions of law and fact predominate here because the central liability questions in this case—whether the PHH Defendants' collection of Convenience Fees is improper and whether Defendant violated state law—can be resolved for all Settlement Class Members through generalized evidence. (Doc. 152.)

#### 2.    A Class Action is the Superior Method of Adjudicating this Case.

As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . .for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement. *See e.g.*, *Silveira*, 2021 WL 2403157, at *4 (finding superiority satisfied).

-26-

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

## VIII.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order, substantially in the form of the proposed Preliminary Approval Order (Ex. B to the Settlement Agreement): (i) conditionally certifying the Settlement Class; (ii) preliminarily approving the proposed Settlement as fair, reasonable, and adequate; (iii) approving the form and manner of notice and directing that notice of the proposed Settlement be given to members of the Settlement Class; (iv) scheduling a hearing before the Court to determine whether the Settlement should be finally approved; and (v) conditionally decertifying the classes certified in Doc. 152, with such order to be reinstated *nunc pro tunc* should the Plaintiff's forthcoming Motion for Final Approval of the Proposed Settlement be denied.


Dated: June 29, 2022                              Respectfully submitted,


                                                    */s/ Lee Lowther*
                                                  Edwin Lee Lowther (admitted *pro hac vice*)
                                                  llowther@cbplaw.com
                                                  Hank Bates (SBN 167688)
                                                  hbates@cbplaw.com
                                                  Randall K. Pulliam (admitted *pro hac vice*)
                                                  rpulliam@cbplaw.com
                                                  CARNEY BATES & PULLIAM, PLLC
                                                  519 W. 7th St.
                                                  Little Rock, AR, 72201
                                                  Tel. (501) 312-8500
                                                  Fax (501) 312-8505

                                                  Don F. Livornese (State Bar No. 125,934)
                                                  donl@ruyakcherian.com
                                                  RUYAK CHERIAN LLP
                                                  222 N. Pacific Coast Highway, Suite 2000
                                                  El Segundo, CA 90245
                                                  Tel. (310) 586-7689

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO

James L. Kauffman (admitted *pro hac vice*)
jkauffman@baileyglasser.com
BAILEY GLASSER, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel. (202) 463-2101

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2022, I caused a copy of the foregoing to be electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

 */s/ Lee Lowther*
LEE LOWTHER

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-04303-WHO